**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS**

FILED

APR 1 1 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,**<br>**Plaintiff,**<br><br>**v.**<br><br>Watts Guerra, LLP, Mikal C. Watts,<br>Francisco Guerra, IV, Paige Boldt, Berken<br>Media, LLC, Robert kenyon, and John/Jane<br>Does 1-5<br><br>**Defendant** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

SA22CA0363 OG

**Plaintiff's Original Complaint**

**Parties**

1. The Plaintiff is Craig Cunningham and natural person and can be served at 3000 Custer Road ste 270-206 Plano, Tx 75075.

2. Watts Guerra, LLP is a law firm with multiple offices across Texas and California that does mass tort litigation, and can be served at 4 Dominion Drive, ste 1100, San Antonio, Tx 78257.

3. Francisco Guerra, IV is a licensed Texas attorney who can be served at 4 Dominion Dr., ste 1100 San Antonio, Tx 78257.

4. Mikal C. Watts is a licensed Texas attorney who can be served at 14 Duxbury park, San Antonio, Tx 78257 or 4 Dominion Dr., ste 1100 San Antonio, Tx 78257.

5. Paige Boldt is a licensed Texas attorney who can be served at Dominion Dr., ste 1100 San Antonio, Tx 78257.

6. Berken Media, LLC is a Tennessee corporation that can be served via registered agent and corporate officer Robert Kenyon 4200 Balsam Wood LN, Ooltewah, Tn 37363.

7. Robert Kenyon is a natural person and corporate officer of Berken Media, LLC and can be served at 4200 Balsam Wood LN, Ooltewah, Tn 37363.

8. John/Jane Does 1-5 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

9. <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

10. **Personal Jurisdiction.**  This Court has general personal jurisdiction over the defendants because they live and reside here and transact business in Texas

11.  **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed from California by a California Licensed attorney.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1)[1]

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28

FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

25. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

26. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

27. Defendants Watts Guerra, LLP at the direction of their managing attorneys Francisco Guerra, Mikal C. Watts, and Paige Bodlt hired Berken Media, LLC at the direction of Robert Kenyon to make illegal robocalls to solicit for clients for Mass tort litigation, specifically claims for consumers who have been harmed by Zantac. Watts Guerra,

LLP is a law firm that regularly handles mass tort claims and decided to engage in
illegal solicitation for clients through illegal robocalls which is unethical and violates
state and Federal laws regarding telemarketing.

### Illegal Robocalls to the Plaintiff

28. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that
contained a pre-recorded message and were initiated using an automated telephone
dialing system. The calls were on behalf of Watts Guerra, LLP (hereafter Watts) and
at the express direction of Berken, LLC to place illegal robocalls in order to
improperly and illegally solicit for legal clients on behalf of a licensed attorney and
law firm.

29. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message
began indicating the calls were initiated using an ATDS. The Plaintiff recieved
multiple emails subsequently after the Plaintiff answered some basic questions about
Zantac mass tort cliams which contained a retainer for legal services bearing the name
of Watts Guerra, LLP and a power of attorney form assiging Mikal C. Watts and
Paige Boldt as an attorney for the Plaintiff. The retainer and power of attorney forms
contained the name, address, and phone number of Watts Guerra, LLP.

30. Plaintiff fielded multiple calls from these parties to 2 different phone numbers,
indicating that the Defendants were blanketing the entire country with harassing and
annoying robocalls. Plaintiff recieved calls for people who he had no relation and had
never heard of, including Bonnie Deeraffenreid on behalf of Patricia Massendale in
Denver Colorado. Plaintiff recieved 4 calls on 10/18/2021 to 2 different numbers.

31. On one call, the caller that spoke to the Plaintiff stated that they were the "consumer

help line" calling on behalf of Berken Media and the attorney that were contracted with Berken Media was Watts Guerra. Plaintiff notes that Watts Guerra does not maintain an office in Colorado and it doesn't appear any attorneys for Watts Guerra are actually licensed to practice law in Colorado, but despite this defendant Watts directed calls to be placed to states where they could not ethically or legally practice law.

32. Starting in 2021, the Plaintiff recieved multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose.

33. Plaintiff alleges at least 4 calls, but believes there may be many more given the elaborate steps taken by the defendants to disguise their identities and outright lies about their identities.

34. At no time did the defendants properly register with the Texas Secretary of State for telemarketing purposes as required by the Texas Business and commerce code 302.302.

35. Defendant's also sent the Plaintiff multiple retainers to the emails the Plaintiff gave to the defendants during the offending phone calls. (Ex A and B)

36. Defendants failed to maintain an internal do not call list or train their employees on the use of an internal do not call list.

37.  Each call was sent by an automated telephone dialing system.

**Defendant Watts and their managing attorney's are engaging on a common enterprise with Berken Media  to solicit for clients across the country using illegal**

**Robocalls.**

38. Each and every of the named defendant attorney's are engaged in a common enterprise with Berken Media to improperly solicit for clients through illegal robocalls in states where these individuals are not licensed.

39. As these defendants sought to profit and have admittedly recieved clients from these illegal robocalls and provide legal services to consumers including the Plaintiff as a result of the illegal client solicitation attempts by licensed attorney Daniel S. Marsh, they are each liable for the calls jointly and severally.

### This Court has Supplemental Jurisdiction over the state law claims in Texas

40. As the Plaintiff's claims under state law are substantially related and rise out of the same facts and issues in the underlying Federal Claims, this court has supplemental jurisdiction to hear the Plaintiff's Texas claims against the defendants.

### The Plaintiff's cell phone is a residential number

41. The calls were to the Plaintiff's cellular phone***-***-1977 and ***-***-3333, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

42. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants and her corporation violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

43. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.  FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing

robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

        a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

        b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

        c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

9.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and Defendants name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## IV. FOURTH CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.302

15.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

16.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.101**, by making telemarketing calls without being registered with the Texas Secretary of State as required.

17.     Mr. Cunningham is entitled to an award of at least $5000 in damages for each such violation. **Texas Business and** Commerce Code 302.302

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E.      An award of $1,500 in statutory damages arising from violations of the
Texas Business and Commerce code 305.053

F.      Award the Plaintiff $5,000 per call for damages under the Texas Business
and commerce code 302.302

G.      An award to Mr. Cunningham of damages, as allowed by law under the
TCPA;

H.      An award to Mr. Cunningham of interest, costs and attorneys' fees, as
allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                              April 6, 2022

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206 Plano, Tx 75075

## CONTRACT OF EMPLOYMENT AND CONSENT TO FEE SHARING (ZANTAC)

The undersigned "Client": _____ (client's printed name; or if deceased, name of client and decedent as: (client) individually and as representative of the estate and/or the successor in interest of (decedent)), hereby employs Watts Guerra LLC and _____, called "the Firms," as my attorneys to represent me in all claims, suits, or other matters arising out of and resulting from personal injuries suffered by me or decedent related to Zantac, and against any designer, maker, distributor, and/or seller of such product(s) but not against physicians or other health care providers that may have used, prescribed or administered same.  Further, unless otherwise specifically agreed in writing, the Firm represents only Client and will not pursue claims for loss of consortium.

1.   **THE FIRMS' AUTHORITY.** Client fully authorizes and directs "the Firms" to manage and handle my claims as they deem proper and to investigate and prosecute them, with or without filing a lawsuit, in any manner they deem advisable.  Client authorizes the Firms to deliver in my name any and all notices, receipts, authorizations, releases, pleadings and any other documents proper in and to the handling of my claims. Client authorizes the Firms to use their professional judgment and any relevant documents, records, or other information that the Firms deem necessary to proper representation of Client.  If, at any time, the Firms determine, for any permissible reason, that prosecution of Client's claims should be discontinued, the Firms may withdraw from my representation. Client understands and agrees that the Firms may transmit Client's protected health information electronically in the course of representing Client.

2.   **CLIENT'S COOPERATION.** Client agrees to cooperate fully with the Firms, disclose all relevant facts and promptly advise the Firms of any change in address or telephone number, and to promptly comply with all reasonable requests of the Firms on all matters related to this contract.  Client understands that failure to fully cooperate may be a basis for termination of this contract.  Client agrees not to attempt on his/her part to unilaterally settle the claims made the subject of this contract.  The Client will rely exclusively upon the representation of the Firms during any settlement negotiations.  **No settlement will be made without the Client's consent.**

3.   **CONTINGENT FEE ARRANGEMENT.** The Firms will assume joint responsibility for Client's representation.  In consideration of such legal services, Client hereby assigns and grants to the Firms the following percentage of any monies, interest, or property recovered: **FORTY PERCENT (40%)** in the event a recovery.  Client consents to the Firms sharing their attorneys' fees with local counsel as necessary. **Attorneys' fees will be determined before repayment of expenses; that is, attorneys' fees will be calculated based on the gross recovery, before expenses are deducted. In the event there is no recovery, Client owes the Firms nothing.**

4.   **EXPENSES PAID BY THE FIRMS.** The Firms agree to advance any and all reasonable expenses associated with the prosecution of client's claim.  **Expenses advanced by the Firms will be repaid to them from any recoveries made. In the event no recovery is made, no repayment of expenses advanced will be required.**  Advanced expenses that shall be reimbursed include office expenses attributable to the representation, other than general overhead expenses.  Such reimbursable office expenses shall include, but are not limited to, internal document copying and scanning, document copying and scanning performed by others, photograph, video and document imaging expenses and reproduction thereof, mileage at the rate allowed by the Internal Revenue Service, travel, and all airfare, mileage, legal research and investigation charges, long distance telephone charges, fax and electronic mail expense and postage.  The reimbursable expenses will also include any and all expenses or costs paid to or for persons, entities or businesses outside the firm which are related to the representation, including but not limited to, experts and their staffs; jury consultants; specialized legal counsel for bankruptcy proceedings initiated by defendants; Medicare/Medicaid, hospital lien, and subrogation resolution services; interpreters; investigators; court reporters; videographers; and document imaging companies and personnel.  **Regardless of outcome, Client will be responsible for all medical bills and liens incurred as a result of medical treatment received, and for the satisfaction of all insurance subrogation liens.**  Client understands the Firms may be representing multiple clients and agrees that in representing multiple clients many of the expenses incurred are common case expenses, which are costs and expenses incurred for the benefit of multiple clients, including expert witness fees, depositions of defendants, experts, and non-party witnesses, settlement conferences, trial expenses, filing fees, copy costs, and other expenses that are incurred for purposes of influencing the outcome of multiple clients' claims.  **Client agrees the expenses that I am required to reimburse, if there is a recovery, include not only expenses for my own claims, but also the common case expenses.**

5.   **MULTIPLE CLIENTS.** Client understands and agrees that the Firms may be representing more than one client in this matter and that the following aspects of joint representation have been disclosed: (1) the Client might gain or lose some advantages if represented by separate counsel; (2) the Firms cannot serve as an advocate for one client against another client, but must assist all clients in pursuing their common purposes; (3) the Firms must deal impartially with every client; (4) information received by the Firms from or on behalf of any jointly represented client concerning the matter may not be confidential or privileged as between the jointly-represented clients; and (5) if a conflict arises between clients that results in the discharge or withdrawal of the Firms, the Firms might not be able to continue representing any of the clients involved; and (6) that the representation of all clients by the Firms will not necessarily expedite handling of the matter or reduce associated attorneys' fees and expenses. **Client consents to the Firms representing more than one client in this matter.**

6.   **LAW AND VENUE.** This agreement shall be governed by and interpreted under Texas substantive law, and exclusive venue and jurisdiction of any lawsuit or claim arising out of or relating to this agreement shall lie in Texas State District Court in Bexar County, Texas.  If any provision of this agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

7.   **NO SOLICITATION OF CLIENT.** By signing and entering into this agreement, Client hereby affirms that Client's case was not solicited by the Firms, the agreement is not being entered into as a result of promises of money, no promises of a successful recovery have been made to Client, and Client has freely and voluntarily entered into this agreement.

EXECUTED this _____.

**READ AND ACCEPTED BY:**

_____          _____          _____

**CLIENT SIGNATURE**                        **CLIENT EMAIL**                        **WATTS GUERRA LLP for THE FIRMS**

_____   _____   _____   _____          _____

**STREET ADDRESS**                    **CITY**              **STATE**           **ZIP CODE**             **CLIENT PHONE NUMBER**

Request Letter under HITECH Act of 2009 for Electronic Copy of my Medical Records

To:     Medical Care Provider: _____

From:   Patient Name: _____

             _____

             Patient DOB: _____     Patient SSN: _____

Pursuant to 45 CFR § 164.524, I, the Patient, am requesting that you, my Medical Care Provider, send an electronic copy, in PDF format, of all of my protected health information ("PHI") from_____to_____ to the third-party listed below. Please be advised that with the release of PHI Records, I consent to the release of all sensitive information, including HIV, AIDS, Alcohol and Drug Abuse, Mental Health, Genetic Testing information. Pursuant to Federal law, promptly provide records in the following manner:

Please scan paper records and/or convert electronic records to PDF format and email them to:

If you are unable to email my PHI, you may save in PDF format to a thumb drive and mail the same to:

As necessary, you may bill to the address above for the reasonable cost-based fee for the labor incurred copying my PHI Records, as well as any paper or electronic medical supply costs, or postage. You may also contact that address for further correspondence regarding this request. Please note that this request is not for a summary of PHI Records, but rather for the full set of detailed PHI Records.

The applicable regulations provide the following rules for compliance with this request:

1. There is a 30-day deadline to supply the requested PHI.
2. There is no requirement under the HITECH Act for a HIPAA authorization. This letter is sufficient.
3. There is no expiration event or date relating to this patient or the purpose of the use or disclosure of this information.
4. Prohibited charges include access charges, inventory charges, labor for reviewing the request, searching for or retrieving the PHI.
5. Noncompliance includes charging more for sending the records to my third-party designee.
6. Noncompliance includes claiming the inability to provide the PHI via email or mail.
7. I have the right to revoke this authorization in writing.
8. You may not condition treatment, payment, enrollment, or eligibility for benefits on whether I sign this authorization when the prohibition on conditioning of authorizations in (b)(4) of 45 CFR §164.508 applies.
9. By signing below I consent to have all of my PHI released to include: Laboratory test results; Pathology reports; photographs, videotapes, digital images; alcohol, drug or substance abuse records, HIV testing and results, mental health and psychotherapy records except psychotherapy notes; which are the personal notes of a mental health care provider documenting or analyzing the contents of a counseling session, that are maintained separate from the rest of the my medical record.

This copy is as valid as the original. Thank you for your prompt response.

_____
Signature                                Date
                                         (Signature is valid for 365 days)

_____
Printed Name

Request # _____       For more information on the Federal HITECH Act and its regulations:
                           https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/

## AUTHORIZATION FOR USE & DISCLOSURE OF INDIVIDUALLY IDENTIFIABLE AND PROTECTED HEALTH INFORMATION ("HEALTH INFORMATION")

1. *PATIENT IDENTIFICATION*
PRINTED NAME:
DATE OF BIRTH:
SOCIAL SECURITY NUMBER:

2. *PATIENT ADDRESSES*
ADDRESS (Current Residence): _____
    CITY: _____ STATE: _____ PA ZIP: _____

ADDRESS (Time of Treatment/Prescription): . _____
    CITY: _____ STATE: _____ ZIP: _____

3. *PERSONS/ORGANIZATIONS AUTHORIZED TO DISCLOSE HEALTH INFORMATION: (hereinafter referred to as "Custodian Of Records"):*

4. *PERIODS OF HEALTH CARE/HEALTH INFORMATION/ACADEMIC INFORMATION TO BE DISCLOSED*
By signing, I authorize the *Custodian of Records* to release my medical or billing records containing information in reference to: *Communicable and Non-Communicable Diseases, and/or Drug and/or Alcohol Abuse, and/or Psychiatric, and/or HIV/AIDS Records.*

Date (From): _____ Date (To): _____    Date (From): _____ Date (To): _____

**HOSPITAL MEDICAL RECORDS:**
___Complete Inpatient and Outpatient Health Record
___Emergency Room Record    ___History & Physical Exam    ___Discharge Summary
___Consultation Reports    ___Progress Notes    ___Laboratory Test Results
___Radiology Reports    ___Radiology Studies (Films & Images) to Match Attached Reports
___Operative Reports    ___Pathology Reports    ___Pathology Slides
___Photographs, Videotapes
___Abstract of Health Record (All Transcribed Physician Reports & Test Results)
**MEDICAL RECORDS:**
___Complete Emergency Medical Transport & Health Record
___Complete Autopsy Report, Autopsy Photographs, & Toxicology Report
___Complete Health Record from Physician's Office* or Clinic* or Chiropractor* or Acupuncturist
___Complete Pharmacy/Prescription Record
___Complete Rehabilitation/Physical/Occupational/Recreational/Speech Therapy Record*
___Complete Psychiatric, Psychological, Licensed Clinical Social Worker, Mental Health Counselor/Therapist
___Record and associated Testing*
___Complete Home Health/Nursing Record*    ___Complete Nursing Home Record*
___Complete Funeral Home Record
___Complete Durable Medical Equipment Record/Medical Supply Record*
___Complete Prosthetic Equipment & Fitting Record*
___Complete Dental Record*
___Radiology Reports*    ___Radiology Studies (Films & Images)
___Laboratory Test Results*    ___Pathology Reports*  ___Pathology Slides
___Photographs, Videotapes, Digital Images
___ Other _____.
• Including records/documents received from any other health care providers, therapists, or counselors.
**BILLING RECORDS:**
___Complete Billing Record including an Itemized Statement

5. *TO WHOM AND WHERE TO SEND DISCLOSED HEALTH INFORMATION:*
I authorize the disclosure and use of the Health Information described above to the following person(s) or organization(s):

*SEND INFORMATION TO:*

_____
_____    *AS AGENT FOR*    Watts Guerra LLP
_____                      5726 W Hausman Rd Ste 119
_____                      San Antonio, TX 78249
                                       866.529.9100

6.   ***PURPOSE OF DISCLOSURE/USE:***          <u>CIVIL LITIGATION</u>

7.   <u>***RE-DISCLOSURE:***</u>
     I understand the information disclosed by this Authorization may be subject to re-disclosure by the recipients and no longer be protected by the Health Insurance Portability and Accountability Act of 1996. The facilities, their employees and officers are hereby released from any legal responsibility or liability for disclosure of the above information to the extent indicated and authorized herein.

8.   <u>***LIMIT & RIGHT TO REVOKE AUTHORIZATION:***</u>
     Except to the extent that action has already been taken in reliance on this Authorization, I understand this Authorization is voluntary and that I may revoke it at any time by submitting a notice in writing to the Custodian of Records or organization(s) providing the Protected Health Information. Unless revoked this Authorization will expire on the following date or event:  upon completion of pending civil litigation. Expiration date/event is further defined as resolution of the claim asserted or at the conclusion of any litigation instituted in connection with the subject matter of pending civil litigation and/or of the Notice of the Health Care Claim.
     Treatment, payment, enrollment in a health plan, or eligibility for health insurance benefits may not be conditioned on my signing this authorization.

9.   The office of **WATTS GUERRA LLP**, is authorized to discuss with any health care provider, therapist, individual, fiduciary, agent, or other person any evidence, testimony or fact deemed by said attorneys to be material, and said attorneys and their agents are authorized to examine, inspect, copy, and/or inquire of any person, firm, corporation, institution or agency thereof concerning or relating to any evidence, documents, reports, and/or records. All such persons are requested to freely cooperate with said attorneys or their agents.

10.  The Custodian of Records is released from any legal responsibility for the disclosure of the above stated Health Information to the extent indicated and authorized herein.

11.  A facsimile, photostatic, carbon or other copies of this Authorization are intended and shall be treated as an original.

12.  I understand that the health information described above may be transmitted electronically and may be re-disclosed electronically by WATTS GUERRA LLP.

13.  <u>***RIGHTS & SIGNATURE OF PATIENT OR PERSONAL REPRESENTATIVE REQUESTING DISCLOSURE:***</u>
     I understand that I do not have to sign this Authorization and that my treatment or payment for services will not be denied if I do not sign this form unless specified above under Purpose of Request. I can inspect or copy the Health Information to be used or disclosed. I may see and receive a copy of this Authorization. I authorize the Custodian of Records to disclose the Health Information specified above. The information I am requesting may be sent by U.S. mail service, expedited mail services (such as Federal Express, Lone Star, etc.) and/or electronic facsimile in accordance with the provider's facsimile policy.

SIGNATURE**_____   DATE:_____

PRINTED NAME:_____
**If you are signing as a <u>PERSONAL REPRESENATIVE</u> of another person, you <u>MUST</u> provide a description of your authority to act for the other person (for example, a Power of Attorney), and a copy of the document, if any, that authorizes you to act as the patient's personal representative.

# **POWER OF ATTORNEY**

STATE OF _____  *

                                    *     KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF _____*

     That   I,   _____ ,   have   made,

constituted, and appointed, and do so by this instrument hereby make, constitute, empower, and

appoint, Paige Boldt, Mikal C. Watts, and or WATTS GUERRA LLP, Attorneys at Law (collectively, my

"attorneys"), 5726 W Hausman Rd, Suite 119, San Antonio, Texas 78249, as my true and lawful attorneys

for me and give my attorneys the powers listed below to act in my name, place, and stead to appear for

and represent me in the claims involving <u>Zantac</u> giving my said attorneys full power to do everything

whatsoever requisite and necessary and in any way which I, myself, could do if I were personally present.

     My attorneys' powers shall include the power to: (a) take any and all steps necessary to request

and collect medical and pharmacy records related to my representation; (b) take any and all steps

necessary to request and collect any and all mental health records related to my representation; (c) take

any and all actions necessary to resolve issues with ordering medical and or pharmaceutical records,

including signing my name to medical, pharmacy, Health Insurance Portability and Accountability Act of

1996 (HIPAA), and similar authorizations, or otherwise digitally affixing a copy of my signature to said

authorizations, in order to obtain medical and pharmaceutical records related to my representation; (d)

take any and all actions necessary to verify, affirm, and or attest to discovery responses in my lawsuit,

including plaintiff fact sheets or similar requests, including signing my name to said discovery documents,

or otherwise digitally affixing a copy of my signature to said documents; and (e) take any and all actions

necessary to identify and resolve liens that are or might be asserted related to my injuries, including, but

not limited to Medicare, Medicaid, insurance, workers compensation, and or other health care related

liens, by signing my name or otherwise digitally affixing a copy of my signature to documents retaining,

and otherwise utilizing, specialized lien resolution groups to assist in said matters.

It is understood and agreed that the attorneys' fees in my case are governed by and are subject to the attorney Employment Contract entered into between WATTS GUERRA LLP and myself, and further, no settlement will be made without my consent. This Power of Attorney shall become effective immediately upon execution; however, I may revoke this power of attorney at any time by providing written notice to my Attorneys.

I agree that any third party who receives a copy of this document may act under it.  Revocation of this power of attorney is not effective as to a third party until the third party receives actual notice of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

IN TESTIMONY WHEREOF, I have hereunto set my signature, this _____ day of _____, 20_____, at __:___ am/pm.

x_____

 Gmail

*eX B*

# Retainer form/ Signature needed

1 message

---

**ana.gutierrez@gurusagent.com** <ana.gutierrez@gurusagent.com>          Wed, Oct 27, 2021 at 5:49 PM
To: craig.cunningham1980@gmail.com

Dear Mr. Cunningham,

We're reaching out again following up your Zantac claim. We wanted to make sure you did not have any concerns about the retainer form sent to your email and to know if you're still interested in pursuing it. Please remember this is a time sensitive document.

Reminding that you, the client, will not pay anything out of pocket for this process.

In order to proceed, please fill out the electronic form I have submitted (you will be able to see it in a few seconds in your inbox). Click "get started" to begin the signing process, then click "next" everytime you complete a field. Once you're done, this will go to our system and you can expect a call from our attorneys within 1-7 business days.

If you have decided not to continue with this, be so kind to let us know to stop.

Feel free to call me at (423) 436 7660 Monday-Friday from 9:00-18:00 hrs (CDT).

Have a good day, best regards.

Ana G.
Consumer Case Helpline
(423) 436 7660

M Gmail

c c <craig.cunningham1980@gmail.com>

*exC*

**RV Watts Zantac Retainer - Craig Cunningham: Signature Request from ana.gutierrez**

1 message

**ana.gutierrez** <noreply@signnow.com>                          Mon, Mar 28, 2022 at 12:33 PM
Reply-To: ana.gutierrez@gurusagent.com
To: craig.cunningham1980@gmail.com

**signNow**

## You were invited to review and sign a document

ana.gutierrez@gurusagent.com invited you to sign "RV Watts Zantac Retainer - Craig Cunningham"

View Document

**Did you receive this email by mistake or have any questions?**
You can contact the sender by clicking the button below.

**Contact Sender**

**This invite will expire in 30 days**

This email contains a secure link to signNow designed for the initial recipient. Please do not forward or share this email, link, or access code with others. If you believe this email was sent to you in error, please contact the sender.

 

 Gmail

New Country LLC <newcountryllc@gmail.com>

$exp$

## Reminder: RV Watts Zantac Retainer Bonnie Deeraffenreid obo Patricia Massendale: Signature Request from susana.valenzuela

1 message

**susana.valenzuela (at gurusagent.com) via** <mail@signnow.com>
Reply-To: susana.valenzuela@gurusagent.com
To: "newcountryllc@gmail.com" <newcountryllc@gmail.com>

Sun, Apr 3, 2022 at 7:10 PM



Open Document

susana.valenzuela@gurusagent.com invited you to sign "RV Watts Zantac Retainer Bonnie Deeraffenreid obo Patricia Massendale"

This invite will expire in 48 day(s).

Use signNow on iOS, Android, and the Web.

This transcript was exported on Oct 22, 2021 - view latest version here.

**Craig Cunningham:**
Hello?

**Susan:**
Hello. This is Susan. This is about your ability to receive compensation from past Zantac usage. If you or a family member have used Zantac for at least one year and have developed cancer, press one. If you would like to be placed on the do not ...

**Speaker 3:**
Yes. Hi. Thank you for holding. I understand that you or a loved one might have been affected by Zantac. Is that correct?

**Craig Cunningham:**
Yes.

**Speaker 3:**
Did you get a cancer diagnosis after using Zantac?

**Craig Cunningham:**
Yes.

**Speaker 3:**
What kind of cancer did you get?

**Craig Cunningham:**
Colon cancer.

**Speaker 3:**
Sorry to you hear that. When you got colon cancer, were you under the age of 75?

**Craig Cunningham:**
Yes.

**Speaker 3:**
Your name is?

**Craig Cunningham:**
My name is Craig.

**Speaker 3:**
Craig, is this number that I have is good for you to get the associates to get back with you at on?

**Craig Cunningham:**

Yep.

**Speaker 3:**
Craig, what's your last name?

**Craig Cunningham:**
Cunningham.

**Speaker 3:**
Do you have a mailing address that's good? It could be a PO box if you like.

**Craig Cunningham:**
Yes. Are you ready?

**Speaker 3:**
Sure.

**Craig Cunningham:**
650 East Stonewall Street. That's in Charlotte, North Carolina, 28202.

**Speaker 3:**
Can you just, the of phone number, if you can verify the phone number I called you on and is that going to be the number I can call you back on?

**Craig Cunningham:**
Yeah, it's 704-444-3333.

**Speaker 3:**
Really? That it's a weird number? I used to have a number, I used to have a 331-3033. It was the same back when I was the kid, my number.

**Craig Cunningham:**
Nice.

**Speaker 3:**
That number kind of was like one of those weird numbers. All right. Just quickly now, when were you diagnosed approximately?

**Craig Cunningham:**
About a year or two ago.

**Speaker 3:**
Diagnosed 2019. How long do you think you were taking Zantac? For two years, five years, 10 years?

300744-7045389916-7044443333-IN-1634590732 prere... (Completed          Page 2 of
10/21/21)
Transcript by Rev.com

This transcript was exported on Oct 22, 2021 - view latest version here.

Craig Cunningham:

Five years.

Speaker 3:

Did you get any surgery, radiation or chemo?

Craig Cunningham:

Radiation and surgery.

Speaker 3:

When would be the best time for the associates to get in touch with you?

Craig Cunningham:

Are they available today?

Speaker 3:

Probably not. They usually call back between one to three days. I mean morning, afternoon, evenings. That's what I mean.

Craig Cunningham:

I'm sorry.

Speaker 3:

That's all right. Anytime after 11:00 or 12:00, something like that?

Craig Cunningham:

Sure. Perfect.

Speaker 3:

All right. Like I said, they call back between one or two days and what they do is if you have any information that you might have in a box or something, make sure you have it ready for them. Like I tell all the clients, write down any questions you might want to ask them because they kind of rapid fire their agenda. It's kind of hard to get what it is that you want to ask them. Then you'll play phone tag with them so make sure you know what you want to ask them and make sure you get that in.

Craig Cunningham:

I don't want to do all that. What's the firm?

Speaker 3:

Well, it's Collins and Gold is what it is.

Craig Cunningham:

I'm sorry. Say that again.

This transcript was exported on Oct 22, 2021 - view latest version here.

Speaker 3:

[crosstalk 00:04:55] for them to call you. Collins and Gold, but you're too far for them. They're out of New York. What they'll do is, is they'll give it to a sister firm that's in your area for you to call you because they can't take everyone and that's too far. Somebody from your area that's doing the class action act, they'll call and they'll say who they are and they'll give you their number. They'll notify you as a law firm so you'll know it's them. It won't be somebody like me is what I'm trying to say. It's going to be a law firm.

Craig Cunningham:

I understand. Is there a phone number or anything or an email you can send me just a reminder?

Speaker 3:

No. I don't know that kind of information. Not at all. I won't be able ... Believe me, they call right away. They call probably they'll call the next day. They usually call within one or two days and they'll leave a message. They'll leave message with who they are and the number to call back and their credentials to call because there's all like [inaudible 00:06:04]. I appreciate your time. I hope this works out for you.

Craig Cunningham:

You said it was Collins and Gold? They're calling the next couple of days?

Speaker 3:

Yeah. It probably won't be them though is what I'm trying to tell you.

Craig Cunningham:

It'll be something else.

Speaker 3:

It'll probably be somebody local because you're too far. But it could be though. I don't know. You can't quote me on it but way above my pay grade, but [crosstalk 00:06:28].

Craig Cunningham:

Well, no, I'm just trying to write down if I have any questions or calls. Do you have a number or email or website or anything?

Speaker 3:

I don't know any of that. I have no idea. I have no idea because really what happens is, is that's who more or less I'm working for, but everybody I call is out of town. It's always an out of town law firm that gets with them. Really Collins and Gold ain't got nothing to do with it after we go through all this.

Craig Cunningham:

Which company are you with?

Speaker 3:

This transcript was exported on Oct 22, 2021 - view latest version here.

Well I'm subbing out for Collins and Gold. I work for some guy who does the paperwork more or less for Collins and Gold because there's a lot of ... What it is is there's a lot of paperwork on this and then there's a lot of overflow. I'm just trying to see who can make it to the class act. Maybe you're over 65 and it's a little things and it gets some of that off the desk. That's all it is. I appreciate your time.

Craig Cunningham:

There's nothing, no [inaudible 00:07:35] info or anything I can write down for you guys?

Speaker 3:

No, no. Not me. I wouldn't know that. I wouldn't know that because it's not going be [inaudible 00:07:42] calling you anyway. You'll know. They'll call you back.

Craig Cunningham:

I'll look for it.

Speaker 3:

[inaudible 00:07:46]. All right. Bye.

Craig Cunningham:

Thank you.



**Susannah:**

Hi. Hi, this is the Susannah with a consumer case helpline. Number two. Now, in regards to your potential Statant case for her Tisha. Yes. It seems one of our agents that contact you in regards to this matter. And will I'm calling today just to verify a few more details to assure that your case of qualify. May I have a couple minutes of your time? Yes. I'm calling to verify some details to assure that your case was qualified. May I have a couple of minutes of your time? Okay, great. And Bonnie, and just to confirm here, you said that she was diagnosed with mouth or throat cancer,

**Bonnie:**

Colon

**Susannah:**

Colon cancer. Okay.

**Bonnie:**

Correct. Yes.

**Susannah:**

And was this in 2018?

**Bonnie:**

Okay.

**Susannah:**

What is her date of birth?

**Bonnie:**

August 6th, 1980.

**Susannah:**

I see Navy. Okay. So she was about 20 I'm, 38 years old when she was diagnosed. Okay. You know, if she was prescribed Zantac or did she write over the counter

**Bonnie:**

Prescription?

**Susannah:**

You know how long? She probably took Zantac

**Bonnie:**

Four or five years

**Susannah:**

For five years. Okay. Was this before she was diagnosed with cancer? Did she stop using fan pack after she was diagnosed?

Bonnie:

I got to double check the paperwork on that Company. You're with again?

Susannah:

Yes, I'm with the consumer case helpline, I represent Ber ken media. Our law firm is what Guerra.

Bonnie:

I'm sorry, one more time.

Susannah:

So I'm a consumer case helpline. I sent our work in media. That's the name of our Berken media is B E R K E N

Bonnie:

B R?

Susannah:

Yes. That's who contracts our consumer case helpline to be able to call and we work for the Zantac we work with what's Guerra from okay. What's Guerra, W a T S. And then Guerra that's G U E R R A.

Bonnie:

Okay. All right.

Susannah:

Yes. And, well, what I am, I'm just calling to verify the details that are given to me to verify with you to assure that you do have a potential case with our firm. So I'm able to send them this information and then they can be in contact with you in regards to the matter. Okay, great. And so you said that she probably, you think that she probably was prescribed Zantac. Do you know if she ever used the reneging, which is the generic some type of van tech?

Bonnie:

Yes, I think

Susannah:

So. She used both. Okay. You know how often she took the medicine and the week later she used a daily or once in a while.

Bonnie:

Okay.

Susannah:

So she did use the daily, correct? Yep. What is your relationship with Patricia?

Bonnie:

That's my sister.

Susannah:

Sister. Okay. It's the Patricia still with us, sir. Okay, great. So do you know if she knows that you are doing this for her? Okay. Are you her power of attorney? Yes. Okay. Now, what is the name of the doctor who diagnosed her with colon cancer?

Bonnie:

Ooh, I got to, I got to get all that together for you.

Susannah:

You know the name of the hospital she was diagnosed?

Bonnie:

Yes. It was Parkland general

Susannah:

Parkland general? Yep. Okay. Is this in Denver, Colorado?

Bonnie:

Yep.

Susannah:

Okay. So that information, it is very important, but like I said, you will be in contact with the attorneys. And so before they do call you, I do recommend that you can look for that information. Okay. So it will be the Denver health, correct? At waterpark

Bonnie:

Denver health, Denver health.

Susannah:

And that's in the park neighborhood, correct? Yep. Okay. And do you know the name of the doctor who treated her?

Bonnie:

I don't have that right in front of me now.

Susannah:

Okay. Was she treated at the same hospital? Yeah. Okay. Okay. Is she, well, she treated for surgery, chemotherapy or radiation or any other

**Bonnie:**

Chemo?

**Susannah:**

Surgery and chemo? Yeah. Okay. Okay. With the CLIA, that's all the information I needed to confirm is her first name spelled P a T R I C a. I'm sorry. P a T R I C I a. Okay. Patricia and her last name is Massendale. Dale does spell M a S E N D a L E. Okay. Your home address? It's 44 south Adams street. And apartment 130?

**Bonnie:**

Yep.

**Susannah:**

Okay. This is in Denver, Colorado 8 0 2 0 8. Okay. Okay. And your house number is 7 0 4 4 4 4 3 3 3 3. Those are the types of number you will never forget. Correct. And your cell phone number? That is three zero three three three four eight nine? Yep. Okay, great. Do you have an email address?

**Bonnie:**

Yes. It's new country, llc@gmail.com.

**Susannah:**

So that's new country, L C D. gmail.com. Is your, your first name spelled B O N I E.

**Bonnie:**

I'm sorry for the email?

**Susannah:**

No. Your name is your name? Spelled B O N I E? Yes. You're. Is your last name spelled? D E R a F F E N R E I D. Yep. Okay. That's a nice last name. I've never seen that last name. That's all the information I needed to confirm Bonnie. Now we can proceed with the next step, which is sending you a document for you to review and sign. And this was in order. You may contract affirm for them to represent you on the assess pack lawsuit. Okay. You're the clients will not pay anything out of pocket for this process. Well, once you get to find the agreement, you should be getting in the call from the firm within seven to 14 business days. Okay. All right. I'll just bring me a moment while I send this to you. I'm going to print it to your email address. Okay.

**Bonnie:**

All right. Let me stay on line with you when you send it.

**Susannah:**

Yes, of course. Yes. Yes. Well, not a website for us, but there is a website for the firm because yeah, I'm just a consumer case helpline. Okay. The email that I've sent to you, it comes from me Susannah balanced Sweller and it has your name and your sister's names as well. Okay. If this RV was Zantac retainer.

This transcript was exported on Oct 22, 2021 - view latest version here.

**Bonnie:**

Okay. And all right. I have our V Watson pack. All right, great. And Are you guys with,

**Susannah:**

Yeah, so I'm a consumer case helpline. I represent Ber ken media and we work for the west Garth from, okay. On that document on the last page, it provides you a lot of information regarding the firm. You can as well Google their name and see that information there. Okay. They are, the association is from Texas, sir.

**Bonnie:**

All right, great.

**Susannah:**

You're welcome, sir. Well, will you want me to, would you like me to walk you through the signing process or will you be okay? I'll be okay. Oh yes, of course. If you don't see it on my caller ID, please do write it down on a piece of paper so I can get, okay. It's 4, 2, 3, 2 0 5 6 2 3 5. Okay. Thank you. Oh, you're welcome, Bonnie, if you don't have any questions and you do get to sign the document, you will be getting in contact with the firm within 15 to 17, seven to 14 business days. What else was, I was going to tell you. Oh yeah. Since you sign for your sister, he all the PC name, all the signatures will be for you, but just for the medical information, that has to be her name and her information. Okay. Not you. Okay, Bonnie. Okay. Thank you. You're welcome, Bonnie. Thank you so much for letting me speak with you in regards to the matter. I really appreciate your time. You have a wonderful day. Thank you. You're welcome. Bye-bye.