**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| CRAIG CUNNINGHAM, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | |
| Plaintiff, | CASE NO. 5:23-CV-00910-OLG-ESC |
| vs. | |
| WATTS GUERRA, LLP, WATTS GUERRA, LLC, HENSON FUERST, P.A., LAW OFFICE OF DOUGLAS BOXER, AND BILTMORE LAW GROUP, PLLC, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

# Table of Contents

Introduction and Background ............................................................................................ 1

Factual Background ......................................................................................................... 3

Argument ......................................................................................................................... 4

   I.   Procedural Standard. ......................................................................................... 4

   II.  By filing their respective answers, Defendants' motion to dismiss should be denied as moot........................................................................................................................ 5

   III.  The Court should not consider Defendants' declarations in ruling on their motion to dismiss. .................................................................................................................. 6

   IV.  Plaintiff is not required to allege that he was charged for the subject calls. ........................ 7

   V.  Plaintiff sufficiently alleges that Defendants placed, or caused another to place, the subject calls, and that Defendants are vicariously liable for those calls.......................................... 8

     A.  Plaintiff sufficiently alleges that Defendants are directly liable for the calls at issue....... 9

     B.  Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on agency theory. ........................................................................................................... 10

       1.  Law firms engaged in direct-to-consumer advertising are subject to strict ethical rules, and may not evade compliance with those rules by outsourcing to third parties..... 11

       2.  Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on apparent authority. ............................................................................................. 12

       3.  Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on ratification of the caller's conduct. ................................................................... 14

   VI.  Plaintiff's allegations are sufficient to state a claim, and he is not a *pro se* plaintiff......... 19

Conclusion ....................................................................................................................... 20

**Introduction and Background**

Craig Cunningham ("Plaintiff") alleges that he received a series of automated and prerecorded voice messages from a series of rotating phone numbers seeking—seemingly at random—potential plaintiffs for the pending Camp Lejeune mass tort litigation, absent his prior express consent, as required by the Telephone Consumer Protection Act ("TCPA"). ECF No. 1 at ¶¶ 17-20. When Plaintiff answered these calls and attempted to identify the callers, they refused to provide their identities unless Plaintiff had a Camp Lejeune claim. *Id.* at ¶ 25. In response, frustrated by these continued calls but determined to identify the entity or entities responsible for the calls, Plaintiff feigned interest and provided false information to investigate further.  He  was thereafter referred to Watts Guerra, LLP, Watts Guerra, LLC, Henson Fuerst, P.A., Law Office of Douglas Boxer, and Biltmore Law Group, PLLC (together, "Defendants") for legal representation, and provided with a retainer agreement naming those same entities. *See generally id.*; ECF No. 1-1. On that basis, Plaintiff filed his lawsuit against Defendants, based on their violations of 47 U.S.C. § 227(b)(1)(A)(iii).

Defendants now seek dismissal of Plaintiff's case based on three arguments buttressed heavily by *ad hominem* attacks on Plaintiff, rather than his allegations. Specifically, Defendants seek dismissal on the basis that Plaintiff did not allege that: 1) he was charged money for each of Defendants' calls; 2) any particular Defendant made the subject calls directly; and 3) any of Defendants are directly or vicariously liable for the subject calls at issue. In support of their arguments, Defendants improperly attach *five* party declarations, which are plainly outside the four corners of Plaintiff's complaint, and thus, the Court should not consider them for the purposes of this motion. And, confusingly, Defendants—with exception to Watts Guerra, LLC—each filed answers to Plaintiff's complaint after filing this motion to dismiss, rendering their motion moot for all defendants other than Watts Guerra, LLC. *See* ECF Nos. 9-12. However, even if the Court

did consider those declarations and the motion despite the subsequently-filed answers, Defendants' arguments are meritless.

As to the first issue, TCPA caselaw both in-Circuit and nationwide resoundingly reject the requirement that a called party must allege that it is "charged for the call," as that is part of a *disjunctive* list of criteria which *also* includes delivery of robocalls to a cellular telephone service—which Plaintiff alleged in his complaint. ECF No. 1 at ¶ 14. Notably, Defendants fail to cite a single case supporting its proposition that Plaintiff must "allege that he was charged for the automated calls he alleges he received." ECF No. 7 at ¶ 9.  That is because this is not the correct standard.

As to the latter two arguments, Defendants protest both that Plaintiff does not allege which specific entity delivered the calls at issue, and that Plaintiff fails to adequately allege vicarious liability for Defendants. Although Plaintiff was unable to identify which of Defendants placed, or caused to be placed, the robocalls to his cellular telephone number, he was able to identify Defendants as the entities responsible for those robocalls following his own diligent investigation. As detailed in the complaint, on multiple occasions Plaintiff spoke with the original telemarketer— who *refused* to identify itself or the law firms it was working for without the submission of a Camp Lejeune claim—and only after submitting a pseudonym Camp Lejeune claim did Plaintiff receive the identity of the responsible parties whose actions set these calls in motion.  This allegation is supported by evidence, including the retainer attached to the complaint, and the follow-up communications thereafter. *See generally* ECF Nos. 1; 1-1. It is more plausible than not to infer that Defendants were involved in the calls, given that they were the only ones to benefit financially from the telemarketing efforts.  This more-than satisfies the requirements for alleging vicarious liability at this nascent stage of the proceedings, and Defendants' argument, if tenable, would

reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability. This Court should not endorse such arguments, and should deny Defendants' motion to dismiss in its entirety.

## Factual Background

Beginning in or around December 2022 and continuing through April 2023, Plaintiff began receiving a series of calls, delivered using an artificial or prerecorded voice, from a rotating series of phone numbers, seeking to identify potential claimants for the pending Camp Lejeune mass tort litigation. ECF No. 1 at ¶¶ 17, 19. These calls were delivered to Plaintiff's cellular telephone number. *Id.* at ¶ 14. Plaintiff had no ties to nor interest in submitting a Camp Lejeune claim, and did not previously provide his consent to receiving these calls from the then-unknown caller(s). *Id.* at ¶¶ 18-22, 35. When Plaintiff answered these calls, he was initially greeted with an artificial or prerecorded voice message, that later transitioned to live human beings who, upon information and good faith belief, were consistently located in overseas call centers. *Id.* at ¶ 24. When Plaintiff attempted to obtain the identity of the callers or the companies they were calling on behalf of, the callers initially refused to provide identifying information, and conditioned that disclosure on Plaintiff's submission of a Camp Lejeune claim. *Id.* at ¶¶ 25-26.

As a result, in order to investigate the identity of the progenitor for these calls, Plaintiff submitted a pseudonym claim to the caller(s) and, after being coached by the caller as to what illnesses and treating physicians he should claim to have, had his claim information submitted to Defendants, who then provided Plaintiff with a retainer agreement to employ Defendants. *Id.* at ¶¶ 27-30. Following his receipt of that retainer agreement, Plaintiff took no further action, but continued to receive follow-up emails and phone calls from Defendants encouraging him to sign the retainer agreement. *Id.* at ¶¶ 31-33.

In response to this barrage of solicitation calls, and based on his subsequent investigation

that lead to Defendants as the entities responsible for the calls at issue, Plaintiff filed his class action complaint against Defendants. *See generally id.* In response, Defendants filed three motions to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6), and that same day, all Defendants—except Watts Guerra, LLC—also filed their answers to Plaintiff's complaint. *See* ECF Nos. 6-12.

**Argument**

### I.   Procedural Standard.

As this Court explained in *Centex Homes v. Arias & Assocs.*, "Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring 'a short plain statement of the claim showing that the pleader is entitled to relief.'" *Centex Homes v. Arias & Assocs.*, No. SA-12-CA-53-OG, 2012 U.S. Dist. LEXIS 193854, at *10 (W.D. Tex. May 18, 2012) (Garcia, J.).[1] "[T]he complaint taken as a whole 'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under <u>some</u> viable legal theory' and a plaintiff's pleading obligation includes the twin requirements of fact-based pleading and plausibility." *Id.* (emphasis in original). This Court added:

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. When considering a motion to dismiss for failure to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"

*Id.* at *10.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1]      Unless otherwise indicated, all emphasis is added and all internal citations are omitted.

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The general rule is that courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response." *Ramos v. Taylor*, No. 1:20-CV-1256-RP, 2022 U.S. Dist. LEXIS 227519, at *10-11 (W.D. Tex. Dec. 18, 2022) (Pitman, J.); *see also Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) ("we must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory.").

## II.   By filing their respective answers, Defendants' motion to dismiss should be denied as moot.

As an initial matter, after filing their motions to dismiss, Defendants—with exception to Watts Guerra, LLC—immediately thereafter filed their respective answers to Plaintiff's complaint. *See* ECF Nos. 9-12. Typically, a defendant may file an answer *or* a motion to dismiss under Rule 12(b)(6), rather than filing both at the same time. As a result, the filing of an answer before a court has ruled upon a pending motion to dismiss moots that motion. *See, e.g.*, *Telebrands Corp. v. 1ByOne Prods.*, Civil Action No. 17-997-JFB-SRF, 2017 U.S. Dist. LEXIS 192327, at *5 (D. Del. Nov. 21, 2017) ("When an answer is filed prior to the resolution of a motion to dismiss, the motion to dismiss becomes moot.") (collecting cases). For this reason alone, the Court should deny as moot Defendants' motion to dismiss to the extent it applies to Watts Guerra, LLP, Henson Fuerst, P.A., Law Office of Douglas Boxer, and Biltmore Law Group, PLLC.

However, under some circumstances, courts overlook this procedural misstep, albeit typically in the context of a back-and-forth series of motions to dismiss, answers, and amended pleadings. *See Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2018 U.S. Dist. LEXIS 186468, at *7 (N.D. Tex. Oct. 31, 2018) ("Of course, the filing of the answer eliminates any subsequent

opportunity for Taylor County to seek dismissal of the Third Amended Complaint under Fed. R.

Civ. P. 12(b)(6). However, to find the motion moot under these facts would deprive Taylor County

of a merits ruling on its motion to dismiss. In fact, because the dispositive motion deadline has

already passed, finding the motion moot would deprive Taylor County of a merits ruling on any

dispositive motion."). While such an extenuating circumstance would not apply here given the

early nature of this case and lack of "back-and-forth" filings, Plaintiff will nevertheless address

the merits of Defendants' motion, as well, and the Court should deny Defendants' motion for all

of the reasons explained below.

### III.   The Court should not consider Defendants' declarations in ruling on their motion to dismiss.

In advancing their motion, Defendants attach five party declarations in an attempt to rebut

Plaintiff's allegations—which is plainly inappropriate for a Rule 12(b)(6) motion. *See* ECF Nos.

7-1 - 7-5. In doing so, Defendants offer these declarations to: (1) rebut Plaintiff's claim that he

received a retainer agreement naming Defendants along with follow-up calls from Defendants to

sign that retainer, ECF No. 7 at ¶ 20; (2) rebut Plaintiff's allegations that Defendants retained third

party telemarketers to deliver the phone calls at issue, *id.* at ¶ 24; and (3) to confusingly attack

Plaintiff's status as a "professional plaintiff" in an attempt to tie that to Defendants'

misinterpretation of the TCPA, as discussed *infra* Argument § IV. *Id.* at ¶ 6.

Given that Plaintiff's allegations must be accepted as true at this juncture, Defendants'

attempt to rebut Plaintiff's factual assertions via untested party declarations is plainly inappropriate

and outside the four corners of Plaintiff's complaint. *See Ramos*, 2022 U.S. Dist. LEXIS 227519,

at *10-11; *Go Green Botanicals, Inc. v. Tri-State Ins. Co. of Minn.*, No. SA-22-CV-00373-ESC,

2022 U.S. Dist. LEXIS 141235, at *4 (W.D. Tex. Aug. 9, 2022) ("Generally, in deciding a motion

to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without

converting the motion to a motion for summary judgment.") (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d)). As a result, the Court should strike— or decline to consider—the declarations Defendants submitted in support of their motion to dismiss, and all arguments derived from those improperly attached declarations. *See Blue Yonder Grp. v. Kinaxis Inc.*, Civil Action No. 3:20-CV-03636-K, 2021 U.S. Dist. LEXIS 126776, at *4 (N.D. Tex. May 17, 2021) ("Consideration of the Nair Declaration in the context of the Motion to Dismiss would be improper under Fifth Circuit law because the Nair Declaration is outside of the four corners of the complaint. Therefore, the Court GRANTS to Motion to Strike.").

## IV. Plaintiff is not required to allege that he was charged for the subject calls.

Defendants first argue that Plaintiff's claims must be dismissed for failure to allege that he was charged for the calls Defendants placed, or caused to be placed, to his cellular telephone number. ECF No. 7 at ¶¶ 5-9. This argument is incorrect, as the TCPA allows claims for calls that are made "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Diugosh v. DirectBuy, Inc.*, No. SA-13-CV-722-XR, 2013 U.S. Dist. LEXIS 152587, at *7 (W.D. Tex. Oct. 24, 2013) ("For purposes of the motion to dismiss, this Court tends to agree with Iniguez and its conclusion that 47 U.S.C. § 227(b)(1)(A) is written in the disjunctive, and a call is prohibited if it is made to a cellular number or if it is made such that the receiving party is charged for the call."); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014) ("Osorio is not required to prove that he was charged individually for each of the autodialed calls.") (collecting cases); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009) (holding for the plaintiff despite the defendant's allegation that the plaintiff's TCPA claim was deficient because she was not charged for call); *Katz v. Liberty Power Corp., LLC*, Civil Action No. 18-cv-10506-ADB, 2019

U.S. Dist. LEXIS 162793, at *34-35 (D. Mass. Sep. 24, 2019) ("The disjunctive 'or' indicates that Congress intended to allow TCPA claims for calls placed to cell phones regardless of whether the subscriber is charged a per call fee.").

In advancing their misguided argument, Defendants appear to misunderstand fundamental components of TCPA litigation by conflating two entirely separate categories of claims: (1) those under § 227(b)(1)(A)(iii)—which Plaintiff advances here; and (2) those under § 227(c)(5)—which Plaintiff does not advance. § 227(b)(1)(A)(iii) claims involve the use of an automated telephone dialing system or an artificial or prerecorded voice to deliver telephone calls to cellular telephone numbers *or* telephone numbers which are charged for each call that they receive. § 227(c)(5) claims involve telemarketing communications directed to residential telephone numbers registered to the National Do-Not-Call Registry. Plaintiff did not allege that his cellular telephone number was registered on the National Do-Not-Call Registry, so Defendants' sidetrack discussion concerning such claims is confusing and irrelevant to the claims here, as is their irrelevant conclusion that Plaintiff "switched course" to bring his claims under § 227(b)(1)(A)(iii), despite Plaintiff bringing no other claims in the course of this litigation. *See* ECF No. 7 at 3.

Regardless, Plaintiff is not required to allege that he was charged for each of Defendants' calls to his cellular telephone number, and the Court should accordingly deny Defendants' motion on this basis.

**V. Plaintiff sufficiently alleges that Defendants placed, or caused another to place, the subject calls, and that Defendants are vicariously liable for those calls.**

Despite Plaintiff's thorough investigation and detailed allegations connecting Defendants to the violative calls at issue, Defendants nevertheless seek to dismiss Plaintiff's claims for failure to allege that Defendants made the calls at issue, or that Defendants were vicariously liable for the calls at issue. On each of these alternative theories, Defendants are mistaken.

**A.**     **Plaintiff sufficiently alleges that Defendants are directly liable for the calls at issue.**

Regarding direct liability for the telephone calls at issue, Plaintiff alleges that Defendants either placed, or caused to be placed, telephone calls to Plaintiff's cellular telephone number, without prior express consent, and with the use of either an automatic telephone dialing system or an artificial or prerecorded voice. ECF No. 1 at ¶¶ 2, 34, 81. Plaintiff sufficiently details the connection between the subject calls and Defendants by alleging how the purpose of the calls was to identify customers for Defendants' business—potential Camp Lejeune claimants who would retain Defendants to represent them in the pending Camp Lejeune toxic exposure multi-district litigation. *Id.* at ¶¶ 17-19, 26. Plaintiff also alleged that, after speaking with the calling party and providing a pseudonym submission for a Camp Lejeune claim, he was provided with a retainer agreement naming Defendants to represent him in a Camp Lejeune claim, and thereafter received multiple follow-up calls and emails for the purposes of encouraging Plaintiff to sign that retainer agreement. *Id.* at ¶¶ 27, 30-33.

Defendants, on the other hand, incorrectly state that Plaintiff "does not allege that any Defendants made the calls in question," ECF No. 7 at ¶¶ 15, 18, but this statement is contradicted by Plaintiff's allegation that "Defendants placed, or caused to be placed, repeated telephone calls to be delivered to Plaintiff's cellular telephone number . . . for the purposes of identifying new leads or potential claims for the pending Camp Lejeune litigation." ECF No. 1 at ¶ 87. To the extent that Defendants instead argue that Plaintiff did not specify *which* of Defendants individually made the calls at issue, that deficiency is caused by the calling party's refusal to identify itself, and

not any deficiency in Plaintiff's pleading. *Id.* at ¶ 25. Defendants should not be rewarded for obfuscating their identity as a mean of evading TCPA liability.[2]

Ultimately, if Defendants contend that Plaintiff's allegations as to direct liability are insufficient under Rule 8(a), they could have made that argument. However, Defendants instead suggest that Plaintiff does not allege that Defendants made any calls at issue, and that is rebutted by Plaintiff's allegations in his complaint. As a result, the Court should decline to dismiss Plaintiff's claims on this basis.

> **B.    Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on agency theory.**

In the alternative, Plaintiff alleges that Defendants hired a third-party telemarketer—or telemarketers—to initiate outbound calling campaigns on their behalf in order to identify potential Camp Lejeune-related leads. Defendants would be liable for the actions of their third-party telemarketer(s) based on standard principles of vicarious liability and agency theory.[3]

---

[2]    Defendants also confusingly argues that Plaintiff's allegation that he received at least 22 follow-up calls from Watts Guerra is both "untrue" but also "invited by [Plaintiff's] consent," which appears to be a mutually exclusive argument that is facially inappropriate for resolution at the motion to dismiss stage. ECF No. 7 at ¶ 20.  It would be antithetical to this Court's stated standards for pleadings to view the allegations in the light most favorable to Plaintiff, and take all allegations as true at the pleadings stage, to give any credence to Defendant's position.

[3]    And, given the unique nature of the allegations and Defendants here—law firms allegedly using prohibited methods of direct-to-consumer telephone solicitation—Defendants should be required to meet an even-higher standard to disclaim liability for the actions of their telemarketer, for the reasons discussed *infra* Argument § IV.B.1. Lawyers should in fact be held to the very highest of standards concerning telemarketing efforts to solicit clients, due to their ethical duties to the public.  Accordingly, to the extent discovery reveals that this conduct occurred because hired vendors were not being monitored properly by Defendants when they were attempting to solicit clients to bring Camp Lejeune claims, this would give rise to a ratification theory of liability for willful ignorance.  See *Henderson*, 918 F.3d 1068 at 1976 (reversing summary judgment in TCPA class action on ratification due to evidence supporting a willful ignorance theory); *McCurley v. Royal Seas Cruises, Inc.*, 2022 WL 1012471 *2-3 (9th Cir. April 5, 2022) (reversing summary judgment in a certified class action on the grounds that cruise company was vicariously liable for calls placed by a vendor on their behalf four parties removed in light of their knowledge of "evidence of widespread TCPA violations in the…industry.").

In 2013, the Federal Communications Commission ("FCC") clarified that a party that hires another to conduct its outbound calling campaigns "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6584 (F.C.C. May 9, 2013). "In this regard . . . a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (3d) of Agency*, § 1.01. There are several ways to establish an agency relationship, including actual authority, apparent authority, and ratification. *Id.* at §§ 2.01, 2.03, 4.01. "Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019).

Based on theories of apparent authority and ratification, Defendants are liable for the conduct Plaintiff alleges in his complaint.

### 1. Law firms engaged in direct-to-consumer advertising are subject to strict ethical rules, and may not evade compliance with those rules by outsourcing to third parties.

As an initial matter, in analyzing Defendants' vicarious liability arguments, the Court should be particularly skeptical to Defendants' attempts to wash their hands of responsibility for actions allegedly taken by third parties on their behalf to solicit Camp Lejeune clients. This is because, as law firms, Defendants are each bound by strict ethical rules regarding the solicitation of clients, and this is especially the case for outbound, direct-to-consumer telephone solicitations.

11

For example, the Texas Rules of Professional Conduct state that "[a] lawyer shall not solicit through in-person contact, or through regulated telephone, social media, or other electronic contact, professional employment from a non-client[.]" Tex. R. Disc. Prof'l. Cond. 7.03(b). And "regulated telephone, social media, or other electronic contact" refers to "telephone, social media, or electronic communication initiated by a lawyer, or by a person acting on behalf of a lawyer, that involves communication in a live or electronically interactive manner." *Id.* at 7.03(a).[4] In other words, law firms are flatly prohibited from engaging in direct-to-consumer solicitation calls. And, unsurprisingly, lawyers may not evade these rules by hiring a third party to place outbound solicitation calls in their stead. *See, e.g.*, Tex. R. Disc. Prof'l. Cond. 8.04(a)(1) (prohibiting lawyers from "violat[ing] these rules, knowingly assist[ing] or induc[ing] another to do so, or do[ing] so through the acts of another[.]").

In light of these heightened duties placed on attorneys and law firms, it would be improper to allow Defendants to evade compliance with governing ethical rules merely because they retained another to do so, all while attempting to hide the identity of that calling party.

## 2.   Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on apparent authority.

Against that backdrop, Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on a theory of apparent authority. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Restatement (3d) of Agency*, § 2.03. In other words, an apparent

---

[4]       Materially identical prohibitions can be found in Defendants' home states. *See* California Bar Rule 7.3(a) ("A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment when a significant motive for doing so is the lawyer's pecuniary gain[.]"); Ariz. R. Prof'l. Cond. 7.3 (b) (same); N.C. Rule 7.3 (b) (same).

authority relationship "arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him.'" *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003). "[T]he Court is to focus on the principal's conduct from a third party's perspective, and decide whether that conduct reasonably gives the appearance that an agent is authorized to act." *Banks v. Solar*, 416 F. Supp. 3d 171, 174 (E.D.N.Y. 2018).

Defendants contend that "[Plaintiff] pleaded no facts supporting an allegation of apparent authority because no Defendant here 'ever manifested to him that the telemarketers or other Defendants had authority to act on their behalf.'" ECF No. 7 at ¶ 28. Not so. Here, Plaintiff specifically alleges that, after he provided pseudonym information to the original caller to pass that caller's screening for Camp Lejeune claims, he was forwarded to Defendants and provided with an electronically signable retainer agreement for a Camp Lejeune claim, incorporating the information Plaintiff provided to the initial caller. ECF No. 1 at ¶¶ 27-30. Plaintiff further alleged that, after he was provided that retainer agreement from Defendants, he continued to receive repeated follow-up communications from Defendants to sign that retainer agreement. *See id.* at ¶¶ 31-33. Thus, Plaintiff alleges that Defendants' conduct—seamlessly stepping into the retention process after accepting information from the original caller, sending retainer agreements to leads identified by the original caller, and thereafter sending communications to Plaintiff in addition to the original caller—manifests Defendants' approval of the called party to act on their behalf. *Accord Snyder v. Icard Gift Card, Ltd. Liab. Co.*, No. 0:15-CV-61718-WPD, 2017 U.S. Dist. LEXIS 222844, at *8 (S.D. Fla. May 10, 2017) (allowing gift card marketer to advertise branded products and take orders on behalf of gift card supplier sufficient to allege apparent authority);

13

*Banks*, 416 F. Supp. 3d at 174-75 (finding apparent authority theory satisfied where a TCPA plaintiff alleges that after receiving prerecorded messages promoting a defendant's products from an initial caller, he was subsequently transferred to the defendant's representatives to effectuate the purchase). In other words, it reasonably appeared to Plaintiff that the original caller merely screened potential clients for Defendants, and Defendants seamlessly took over the process after that screening concluded, demonstrating that Defendants intended that the initial caller was acting on their behalf.

Regardless, Defendants' opposition—which improperly relies on numerous extraneous party declarations—presents questions of fact that are improper to resolve for the purposes of this motion, where Plaintiff's allegations must be accepted as true. *See, e.g.*, *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2019 U.S. Dist. LEXIS 150169, at *21-22 (C.D. Cal. Mar. 12, 2019) (denying motion to dismiss based on challenge to allegations of apparent authority as premature, noting that "Plaintiff may very well not adduce sufficient evidence to succeed on his TCPA claim based on a theory of apparent authority. But for now, taking the allegations as true, Plaintiff has adequately alleged a theory of apparent authority between IBD and Handstack to survive dismissal."). As a result, the Court should not conclude, as a matter of law, that Plaintiff fails to allege that Defendants are not liable for the conduct of the calling party based on a theory of apparent authority.

### 3.   Plaintiff sufficiently alleges that Defendants are liable for the calls at issue based on ratification of the caller's conduct.

Defendants next contend that Plaintiff's allegations regarding ratification are insufficient to state a claim for relief that is plausible on its face. In doing so, Defendants fail to identify any controlling standards or principles, and themselves make entirely conclusory arguments that fail under scrutiny.

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Restatement (3d) of Agency*, § 4.01(1). A party "may ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." *Id.* Ratification can occur through a principal's actual knowledge of the acts of its agents, or through "willful ignorance"—such as "knowledge of facts that would have led a reasonable person to investigate further." *Henderson*, 918 F.3d at 1075, 1076 (reversing grant of summary judgment to the TCPA defendant where "a reasonable jury could conclude that USA Funds accepted the benefits—loan payments—of the collectors' calls while knowing some of the calls may have violated the TCPA. If a jury concluded that USA Funds also had 'knowledge of material facts,' USA Funds' acceptance of the benefits of the collector's unlawful practices would constitute ratification."). "The focal point of ratification is an observable indication that a principal has exercised an explicit or implicit choice to consent to the purported agent's acts." *Id.* at 1075.

Notably, if a party accepts the continued generation of leads from an external lead generator, despite receiving consumer complaints regarding the source of those leads, that allegation, at minimum, "presents a jury question on ratification under an 'acceptance of benefits' theory." *Williams v. Pillpack LLC*, No. 3:19-cv-05282-DGE, 2022 U.S. Dist. LEXIS 218979, at *28 (W.D. Wash. Dec. 5, 2022) (denying summary judgment to TCPA defendant based on ratification theory); *accord McCurley*, 2022 U.S. App. LEXIS 9079, at *7 (denying *summary judgment* to defendant regarding vicarious liability through ratification where "Royal Seas had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by

Prospects's calls with scant investigation.").[5] Where a business structure has been set up to remain willfully ignorant of the conduct of one's contractor to avoid liability, this too raises issues of fact for a jury as to ratification. *See Henderson*, 918 F.3d at 1076. That is especially true in industries prone to "widespread TCPA violations"—such as the cruise industry, in the case of *McCurley*, or mass tort lead generators, as alleged here—which heighten a defendant's duty to investigate the actions of its callers. *See id.* at *8.

Courts in the Fifth Circuit concur. For example, in *Callier v. Multiplan, Inc.*, Judge Moltalvo denied, in relevant part, a motion to dismiss based on less detailed allegations than those advanced by Plaintiff:

> [T]he court reasonably infers the existence of an agency relationship amongst Defendants from the Complaint. Plaintiff states Defendants "are liable parties as the direct beneficiar[ies] of the illegal telemarketing calls" because they "authorized a third-party telemarketer to generate prospective customers." This suggests at least one Defendant agreed to market another Defendant's insurance products. Although it is unclear which Defendant made the calls and which Defendant sold the insurance products, it stands to reason that all parties to this transaction realized some commercial benefit from the telemarketing schemes, either in the form of increased business for the telemarketers or increased sales for the Defendants actually selling insurance protects. Indeed, Plaintiff alleges the existence of undisclosed emails showing "that the beneficial parties who were gaining customers" as a result of the robocalls "were the Defendants." At the very least, this allegation suggests one Defendant was a principal that authorized other Defendants to make robocalls on its behalf or, alternatively, ratified the robocalls by accepting the benefits they yielded. Although Plaintiff stands to benefit from more detailed allegations, the allegations are not so sparse as to deny Defendants fair notice of Plaintiff's claims and the grounds from which they arise.

No. EP-20-CV-00318-FM, 2021 U.S. Dist. LEXIS 256747, at *34-35 (W.D. Tex. Aug. 26, 2021);

*see also Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 8:18-cv-919-T-24TGW,

---

[5]     The Court should bear in mind that *Henderson* and *McCurley* were summary judgment rulings, which had the benefit of an evidentiary record.  The Ninth Circuit found triable issues of fact.  These cases bear many legal and factual similarities to the case at bar, which begs the question: If Henderson and McCurley were permitted to proceed to trial, why would this case not make it past a Motion to Dismiss?  Such a position cannot be reconciled with the Federal Rules.

2018 U.S. Dist. LEXIS 223561, at *7 (M.D. Fla. Nov. 15, 2018) (denying motion to dismiss based on similar arguments, noting that "Plaintiff cannot yet be expected to plead the exact identity of each caller (aside from the phone number from which HPIH's agents called), the exact agency relationship of such agents, or the origin of each telephone number that HPIH's agents used" because "that information is exclusively within the possession and control of HPIH.").

Here, Plaintiff alleges that he received multiple violative calls from a party that initially refused to identify itself until Plaintiff submitted information to establish a bona fide Camp Lejeune mass tort claim. ECF No. 1 at ¶¶ 17-19, 25-26. After Plaintiff did so—with the use of a pseudonym and after being coached by the caller—Plaintiff was referred to Defendants and provided with their retainer agreement for electronic signature, followed by a series of follow-up email and telephone call communications from Defendants encouraging him to sign the retainer agreement. *Id.* at ¶¶ 27-31, 33. Notably, Plaintiff also alleges that he received these calls from Defendants after he filed a prior TCPA complaint against Watts Guerra, LLP in April 2022, based on materially identical allegations of illegal robocalls to solicit claims for other mass tort litigations. *Id.* at ¶¶ 15-17. Thus, Plaintiff alleges that Defendants accepted the benefits of the telemarketer(s), that Defendants were on notice of prior violative conduct, that their behavior did not change in response to Plaintiff's complaint, and that Defendants continued to call, or retain another to call, Plaintiff's cellular telephone number. This fits squarely within the ambit of *Williams* and *Callier*, and, accepting Plaintiff's allegations as true—as the Court must—Plaintiff thus sufficiently pleads that Defendants ratified the behavior of the caller, to the extent that discovery later reveals that that caller was an external party or telemarketer.

In response, Defendants merely contend that Plaintiff "does offer a feeble attempt to achieve ratification by attempting to plead one element of ratification," and proceed to cite to

Plaintiff's allegation that, after he engaged with Defendants' caller under a pseudonym for the purpose of investigating his claim, he was presented with a retainer agreement for him to employ Defendants as his counsel in the submission of a Camp Lejeune mass tort claim. ECF No. 7 at ¶ 29. Defendants then argue that connecting Defendants to the mystery caller(s) employed by Defendants is "nothing more than threadbare recitals of the elements" and "a conclusory statement," lacking "some factual predicate that gives rise to an inference of an agency relationship," leaving Plaintiff's claims implausible. *Id.* But Defendants' argument is itself little more than a threadbare argument that Plaintiff's actions are not *enough* for them to be satisfied, without addressing specifically how Plaintiff's allegations "constitute insufficient pleading under Rule 12(b)(6)."   In fact, the standards are much more relaxed.  When a complaint alleges that multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant. *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)*; Pro Image Installers, Inc. v. Dillon*, 2009 WL 112953, at *1 (N.D. Fla. Jan.15, 2009); *Bentley v. Bank of America*., 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011).  Plaintiff satisfies this standard, alleging in sufficient detail the calls at issue, the retainer agreement at issue, and the follow up communications at issue.  Each Defendant is informed of the source of the allegations and put on sufficient notice such that they may each defend themselves with whatever factual or legal defenses ay be available.

Ultimately, Defendants' argument is divorced from reality, as it would impose an impossible burden on Plaintiff far beyond that contemplated by Rule 8(a). In simple terms: if (1) investigating a caller and cooperating with them until you are connected to the parties that they work for, and then (2) getting a retainer agreement to hire those parties for the reasons articulated by the original caller and based on information provided to that initial caller, *and then* (3) receiving

follow-up communications from those parties directly to sign that retainer is nevertheless *still* insufficient for the purposes of plausibly alleging a connection, what more could Plaintiff have done absent discovery? Hiring a telemarketer that refuses to identify itself—as Plaintiff alleges that Defendants did—and thereafter refers the called parties to Defendants does not give Defendants a free pass to violate the TCPA. So, at best, Defendants' generic arguments identify only a question of fact which would be inappropriate to resolve at the motion to dismiss stage. As explained in *Cunningham v. Rapid Response Monitoring Servs.*:

> The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business in the field of security system marketing. Such questions of fact would be inappropriate for resolution on a motion to dismiss. It is similarly premature to draw any conclusion about ratification. Cunningham has alleged an unlawful telemarketing scheme the end result of which was the generation of business for RRMS, and he has alleged that RRMS was an active participant in that scheme. While Cunningham has not alleged every detail of the relationship between the Defendants, the Court recognizes that those limitations are in significant part due to the posture of the case. Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery. As long as he has pled facts sufficient to support a plausibly claim for relief, Plaintiff is not required to illuminate every corner of defendants' relationships at the pleading stage.

251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017); *see also Callier*, 2021 U.S. Dist. LEXIS 256747, at *34-35 (same).

The Court should deny Defendants' motion on the basis that they contend that Plaintiff failed to allege that Defendants authorized the conduct at issue, as Plaintiff has asserted enough evidence and alleged enough facts to rise far above the plausibility standard required at this stage of the proceedings.

### VI. Plaintiff's allegations are sufficient to state a claim, and he is not a *pro se* plaintiff.

In a final concluding argument, Defendants broadly allege that Plaintiff does not allege enough "facts known to him alone concerning the alleged automated calls he complains of." ECF

No. 7 at ¶ 32. But Defendants do not even identify what allegations they complain of, and instead leaves that to Plaintiff, and the Court, to guess. That is plainly improper for a motion under Rule 12(b)(6), as Defendants do not connect their generic and conclusory argument with any specific pleading deficiency that they contend establishes that Plaintiff fails to state a claim upon which relief can be granted.

Lastly, perhaps in error, Defendants close their motion with the suggestion that Plaintiff is "not entitled to more latitude" than "the ordinary *pro se* litigant." ECF No. 7 at ¶ 33. Given that Plaintiff is represented by counsel, it is unclear what Defendants seek to accomplish in advancing this argument, but it certainly has no relevance here.

### Conclusion

For all of these reasons, the Court should deny Defendants' motion in its entirety.

Date: August 29, 2023

/s/ Alex D. Kruzyk
Alex D. Kruzyk
Bryan A. Giribaldo
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

Todd M. Friedman (*Pro Hac Vice Forthcoming*)
tfriedman@toddflaw.com
Adrian R. Bacon (*Pro Hac Vice Forthcoming*)
abacon@toddflaw.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Tel: 323-306-4234 | Fax: 866-6330228

*Attorneys For Plaintiff Craig Cunningham*