UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
| | § | |
| Plaintiff, | § | SA-22-CV-363-OLG (HJB) |
| | § | (Lead Case) |
| v. | § | |
| | § | SA-23-CV-910-OLG (HJB) |
| WATTS GUERRA, LLP, et al., | § | (Consolidated Case) |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns three motions to dismiss pending in the above-styled consolidated cases. [1] Two of the motions were jointly filed by all Defendants: one for lack of standing ("12(b)(1) motion") (Docket Entry 94) and the other for failure to state a claim ("12(b)(6) motion") (Docket Entry 95). The third motion was filed separately by Defendant Watts Guerra LLC ("WG LLC") for lack of personal jurisdiction ("12(b)(2) motion"). (Docket Entry 96.) Pretrial matters have been referred to the undersigned for consideration. (Docket Entry 25.) For the reasons that follow, I recommend that the District Court **GRANT IN PART** and **DENY**

---

[1] Plaintiff's class action complaint is the first entry on the docket sheet in Cause No. SA-23-CV-910-OLG. The pending motions to dismiss were originally filed in that case. (*See* SA-:23-CV-910-OLG, Docket Entries 6–8.) That case was eventually consolidated with Cause No. SA-22-CV-363-OLG—the lead case. (*See* Docket Entry 73.) When the two cases were consolidated, the dispositive motions from SA-23-CV-910-OLG were added to the docket sheet for SA-22-CV-363-OLG. (*See* Docket Entries 94–96.) However, the class-action complaint that those motions seek to dismiss was never added to the docket sheet for SA-22-CV-363-OLG.

In this report, all citations are to docket entries in SA-22-CV-363-OLG, unless specifically noted otherwise. When cited, Plaintiff's class-action complaint will simply be referred to as "CAC."

**IN PART** Defendants' 12(b)(1) motion (Docket Entry 94), **DENY** WG LLC's 12(b)(2) motion (Docket Entry 96), and **DENY IN PART** and **DENY AS MOOT IN PART** Defendants' 12(b)(6) motion (Docket Entry 95).

## I.     Jurisdiction.

These consolidated cases concern, in part, a class-action complaint against several law firms for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (*See* SA-23-CV-910-OLG, Docket Entry 1 (henceforth "CAC").)   The Court has original jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331.   I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

## II.    General Background.

Plaintiff alleges violations of the TCPA by several law firms: Watts Guerra, LLP ("WG LLP") and WG LLC (together, "Watts Guerra"); Henson Fuerst, P.A., ("Henson"); the Law Office of Douglas Boxer ("Boxer"); and the Biltmore Law Group, PLLC ("Biltmore").   Specifically, Plaintiff alleges that Defendants repeatedly called Plaintiff, and others similarly situated, "using (1) an automatic telephone dialing system . . . or (2) an artificial or prerecorded voice," to solicit new clients to file tort claims regarding water contamination at Camp Lejeune.[2]  (CAC, at 3, 11.)

According to the complaint, Plaintiff received "in excess of two dozen calls" between "December 2022 and . . . April 2023" soliciting him "to submit a claim regarding the pending Camp Lejeune water contamination mass tort litigation."  (CAC, at 3.)  Plaintiff alleges that he

---

[2] Camp Lejeune is a United States Marine Corps base in North Carolina. Pursuant to the Camp Lejeune Justice Act of 2022, individuals who, during a specific window of time, "resided, worked, or w[ere] otherwise exposed . . . to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action . . . to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." PL 117-168, August 10, 2022, 136 Stat 1759.

"was greeted with artificial or prerecorded voice messages," and that he "respond[ed] to various prompts in order to be re-routed to live human beings."  (*Id.*)  Plaintiff alleges that the individuals he spoke to refused to disclose the entities on whose behalf they were calling unless he agreed to file a claim in the Camp Lejeune litigation, so he agreed to do so—using a pseudonym.  (*Id.* at 3– 4.)  According to Plaintiff, the callers then requested his signature on written agreements to retain WG LLC, Biltmore, Boxer, and Henson to represent him "in all claims . . . related to water contamination at Camp Lejeune."  (*Id.* at 4.)  After receiving the retainer agreement, Plaintiff alleges that he received "sporadic email requests from Defendants" and "at least 22 follow-up calls from Watts Guerra," asking him to sign the agreement.  (*Id.* at 4–5.)

Plaintiff filed his class action complaint on July 20, 2023.  (*See* CAC.)  On August 1, 2023, Defendants filed their motions to dismiss.  (*See* Docket Entry 94, at 14; Docket Entry 95, at 12; Docket Entry 96, at 9.)  The District Court consolidated the cases after finding that they  "involve the same parties and claims under the [TCPA]."  (Docket Entry 73, at 1.)

## III.    Analysis.

As noted above, Defendants have all moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Docket Entry 94) and for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) (Docket Entry 95), while WG LLC has additionally filed a separate motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Docket Entry 96).  This Report and Recommendation first considers the jurisdictional challenges under Rules 12(b)(1) and 12(b)(2), before turning to the Rule 12(b)(6) motion.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

merits."); *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) (court "must . . . decide issues of personal jurisdiction before ruling on the merits").

> A.   ***Standing: Defendants' 12(b)(1) Motion.***

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge the court's subject-matter jurisdiction as a defense. *Attridge v. Colonial Sav. F.A.*, No. SA-20-CV-00205-OLG, 2023 WL 6444894, at *2 (W.D. Tex. Sept. 28, 2023).   A motion to dismiss under Rule 12(b)(1) may mount either a facial or a factual attack on the existence of subject-matter jurisdiction. *Id.*   A facial attack "requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject-matter jurisdiction," in which case the allegations in the complaint "are taken as true for the purposes of the motion." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). A factual attack, by contrast, "challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Attridge*, 2023 WL 6444894, at *2 (quoting *Menchaca*, 613 F.2d at  511).

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  For there to be a case or controversy under Article III, "the plaintiff must have a ' "personal stake" ' in the case—in other words, standing." *Id.* (citation omitted).  To establish standing, the plaintiff, as the party invoking federal jurisdiction, bears the burden of showing "(1) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that there is a fairly traceable connection between her injury and the defendant's alleged conduct; and (3) that the injury would likely be redressed by judicial relief." *Attridge*, 2023 WL 6444894, at *3 (citing *TransUnion*, 594 U.S. at 423, and *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–66 (1992)).

1. *Injury.*

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.*; *see TransUnion*, 594 U.S. at 427 ("[U]nder Article III, an injury in law is not an injury in fact."). While Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law, . . . . it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion*, 594 U.S. at 425–26 (citations omitted). Thus, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants . . . [him] a statutory right and purports to authorize . . . [him] to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue . . . over that violation in federal court." *TransUnion*, 594 U.S. at 427.

"[C]ertain harms readily qualify as concrete injuries under Article III. . . . such as physical harms and monetary harms." *TransUnion*, 594 U.S. at 425. However, "intangible harms can also be concrete." *Id.* In deciding whether the concrete-harm element has been satisfied, the Court must determine "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (citing *Spokeo*, *Inc.*, 578 U.S. at 341). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424. Intangible harms traditionally providing a basis for suit include, for example, "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* (collecting cases).

Defendants argue that Plaintiff suffered no concrete injury-in-fact. (*See* Docket Entry 94, at 3.) Plaintiff counters that he was actually harmed by Defendants' alleged phone calls,

analogizing the conduct to an "invasion of privacy, an intrusion into his life, and a private nuisance." (CAC, at 5.) For the reasons out below, the Court should find that Plaintiff has sufficiently pleaded a concrete injury by analogy to these common-law torts.

"[U]nwanted communications could cause concrete injuries similar to intrusion upon seclusion or other privacy torts." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022). A person commits the tort of intrusion upon seclusion by "intentionally intrud[ing], physically or otherwise, upon the solitude of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Id.* (quoting Restatement (Second) of Torts § 652B). "One pattern of liability is for repeated, harassing communications." *Perez*, 45 F.4th at 826 (citing Restatement (Second) of Torts § 652B, cmt. d; *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)). And while the traditional intrusion-upon-seclusion tort required repeated communications, *TransUnion* held that "the harms elevated by Congress need only be similar 'in kind, not degree'"; accordingly, "a single unwanted communication could qualify as a concrete injury even though intrusion upon seclusion requires many." *Perez*, 45 F.4th at 826 (citing *Gadelhak*, 950 F.3d at 462). In any event, Plaintiff here alleges that he received not one, but "in excess of two dozen calls, . . . . using an artificial or prerecorded voice, from a rotating series of phone numbers." (CAC, at 3.) Thus, he has pleaded a harm from Defendants' alleged TCPA violations that is sufficiently alike in kind to an intrusion upon seclusion: "a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424.

The Fifth Circuit has also held that a plaintiff has standing to sue under the TCPA for unwanted text messages by analogy to the tort of a private nuisance. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021). In *Cranor*, the Fifth Circuit explained that Congress

enacted the TCPA because unrestricted telemarketing could be both "an intrusive invasion of privacy" and a "nuisance." *Id.* (quoting Pub. L. No. 102–243, § 2 ¶¶ 5, 10, 105 Stat. 2394, 2394 (1991)).  The Court therefore concluded that "Cranor ha[d] alleged a cognizable injury in fact: nuisance arising out of an unsolicited text advertisement." *Cranor*, 998 F.3d at 690.

Based on the foregoing, Plaintiff has carried his burden of pleading a concrete injury for standing purposes at this early stage of the litigation. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."). Thus, to the extent that Defendants seek to dismiss Plaintiff's complaint for lack of standing on the ground that he failed to plead a concrete injury, their motion should be denied.

2. *Traceability*.

A plaintiff lacks standing when they fail to show that their alleged injuries are "'fairly traceable' to the 'allegedly unlawful conduct' of which they complain." *California v. Texas*, 593 U.S. 659, 669 (2021).  Defendants argue that Plaintiff failed to trace his alleged injuries to the conduct of any specific Defendant.  (*See* Docket Entry 94, at 3.)  According to Defendants, Plaintiff "fails to allege that a particular defendant placed an automated call to him, and only generally alleges that Defendants collectively caused others to do so." (*Id.* at 11.)  Plaintiff responds that he satisfied the traceability requirement because he alleged facts indicating that third parties acted in an agency capacity on Defendants' behalf.  (Docket Entry 98, at 9–10.)  He contends that the facts he alleged support this inference because, upon providing a pseudonym and playing along with the third-party callers, he subsequently received retainer agreements—the terms of which would have had Plaintiff hire all Defendants, jointly, with the exception of WG LLP.  (*Id.* at 10–11.)

Other cases have held that an injury for a TCPA violation by an unnamed third party can be fairly traced to a once-removed Defendant, at least when there are plausible allegations that the

third party acted on the Defendant's behalf.[3]  Here, Plaintiff alleges that the offending calls he received from unknown third-parties were made on behalf of Defendants—an allegation supported by the additional allegation that his cooperation with the callers resulted in his receiving a retainer agreement for Defendants' legal services.  (*See* CAC, at 5–6; Docket Entry 98, at 9–11.)  These allegations together are sufficient to trace Plaintiff's alleged injuries to four of the five Defendants (all but WG LLP) at this early stage of the litigation.  Thus, to the extent that Defendants WG LLC, Biltmore, Boxer, and Henson seek to dismiss Plaintiff's complaint for lack of standing because they cannot be fairly traced to his alleged injuries through the third-party callers' conduct, their motion to dismiss for lack of standing should be denied.[4]

The same, however, cannot be said of WG LLP.  Just as the presence of the other Defendants in Plaintiff's submitted documentation supports a reasonable inference that Plaintiff's alleged injuries are fairly traceable to them,  the absence of any mention of WG LLP in any of that documentation forecloses any similar inference as to WG LLP.  Thus, because Plaintiff has failed to fairly trace his alleged injuries to any alleged TCPA violation by WG LLP, his complaint should

---

[3] *See, e.g.*, *Hirsch v. USHealth Advs., LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020) ("Defendants themselves did not contact Hirsch or the class members; instead, the solicitations were made by non-parties. [But] Defendants can still be liable under the TCPA if the calls were made 'on behalf of' Defendants.") (quoting 47 U.S.C. § 227(c)(5)); *Horton v. Palmer Admin. Servs. Inc.*, No. 3:20-CV-3526-X-BN, 2021 WL 8014654, at *4 (N.D. Tex. June 8, 2021) ("While both sides agree that Palmer itself did not call Horton, Palmer 'can still be liable under the TCPA if the calls were made "on behalf of" [Palmer].'") (quoting *Hirsch*, 337 F.R.D. at 132).

[4] The undersigned notes that, when a dispute as to the existence of an agency relationship "intertwines" the traceability inquiry with "a central aspect of any TCPA claim," the Court may properly "assume jurisdiction and treat the attack as one on the merits of the claim under Rule 12(b)(6)." *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *4 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 3:22-CV-0136-G-BT, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023). Indeed, Defendants reiterate their position as to traceability in their 12(b)(6) motion. (*See* Docket Entry 95, at 3–10.) Accordingly, the agency issue is also addressed in conjunction with that motion. *See* Part III(C), *infra*.

be dismissed for lack of standing as to Defendant WG LLP.  Accordingly, Defendants' 12(b)(1) motion should be granted as to WG LLP.

> 3. *Redressability*.

Defendants lastly argue that Plaintiff's injuries are not cognizable, and hence not redressable, under the TCPA.  (*See* Docket Entry 94, at 3.)  But Defendants confuse redressability with the question of whether Plaintiff failed to state a claim.   Redressability is about "the relationship between 'the judicial relief requested' and the 'injury' suffered."  *California*, 593 U.S. at 671.   Here, Plaintiff alleges he was injured when Defendants made dozens of automated robocalls to his cellular phone in violation of the TCPA.  (CAC, at 3, 5, 11.)  As a remedy, Plaintiff seeks an injunction and statutory damages, among other things.  (*Id.* at 12.)  There is no incongruity between the relief Plaintiff requests and the injuries he alleges.   Indeed, the TCPA specifically created a private right of action "to seek both damages," whether actual or statutory, "and injunctive relief."  *Cranor*, 998 F.3d at 688.  Thus, to the extent that Defendants seek dismissal of Plaintiff's complaint for lack of standing on the grounds that the relief he seeks cannot redress his alleged injuries, their motion should be denied.

> **B.    *Personal Jurisdiction: WG LLC's 12(b)(2) Motion*.**

As with subject-matter jurisdiction, the Court "must . . . decide issues of personal jurisdiction before ruling on the merits."  *Texas Tech Univ.*, 171 F.3d at 285 n.9; *see Hernandez v. Vanderbilt Mortg. & Fin., Inc.*, No. CIV. A. C-10-67, 2010 WL 1875796, at *3 (S.D. Tex. May 6, 2010) ("As jurisdictional matters must be resolved first, the Court first turns to the Rule 12(b)(2) Motion."). Unlike subject-matter jurisdiction, however, personal-jurisdiction challenges may be waived.   *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 896 (5th Cir. 2022).   This Report and

Recommendation first considers the question of waiver before turning to the merits of the Rule 12(b)(2) motion.

        1.  *Waiver*.

As a threshold matter, Plaintiff argues that WG LLC waived its personal jurisdiction defense because—in concert with the other Defendants—it filed a 12(b)(1) motion and 12(b)(6) motion *before* filing its 12(b)(2) motion.  (Docket Entry 99, at 6–8.)  WG LLC responds that it has not waived its personal jurisdiction defense because it filed its 12(b)(2) motion on the same day as, and only very shortly after, the 12(b)(1) and 12(b)(6) motions.  (*See* Docket Entry 100, at 2–5.)

Federal Rule of Civil Procedure 12(h)(1) provides that a party can waive a defense— including the defense of lack of personal jurisdiction—by "omitting it from a motion in the circumstances described in Rule 12(g)(2)."  FED. R. CIV. P. 12(h)(1)(A).  Rule 12(g)(2), in turn, provides that a party who files a Rule 12 motion may not "make another motion under this rule raising a defense or objection that was available[ ] to the party but omitted from its earlier motion."  FED. R. CIV. P. 12(g)(2).  The combined effect of these two rules is that the defense of "lack of personal jurisdiction is waived if a party omits the defense from a Rule 12 motion."  *Cruson v. Jackson Nat'l Life Ins. Co*., 954 F.3d 240, 249 (5th Cir. 2020) (citation omitted).  In this case, it clearly appears that WG LLC waived its Rule 12(b)(2) personal-jurisdiction defense when it filed two other Rule 12 motions—one under 12(b)(1) and one under 12(b)(6)—before filing the 12(b)(2) motion.

WG LLC argues, however, that the waiver rule should not apply because it "simultaneously filed each of its Rule 12(b) motions," and that they were "separately entered across 13 minutes only by the sequential necessitudes of this Court's filing system."  (Docket Entry 100, at 4.)  This is unavailing.  The Court's CM/ECF filing system does not permit simultaneous filings—motions

must be filed one at a time.  Motions are automatically entered on the docket sheet once filed—hence, they are entered in the order in which they are filed.  The docket sheet reveals that WG LLC's 12(b)(2) motion was the third Rule-12 motion filed.  (*See* SA-:23-CV-910, Docket Entries 6–8.)  Thus, WG LLC did not file the three motions to dismiss simultaneously.  Rather, it filed the 12(b)(1) motion first, the 12(b)(6) motion second, and its 12(b)(2) motion last.  And the 12(b)(2) motion's last-in-time status on the docket sheet is not a result of the "sequential necessitudes of the Court's filing system," but rather due to a decision made by WG LLC as to which motions to file first.

Because of the strict waiver provisions in Rule 12, litigants are "required to exercise *great diligence* in challenging personal jurisdiction because of the potential waiver a party might incur." *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. CIV.A.3:02-CV-2727-G, 2004 WL 833595, at *4 (N.D. Tex. Apr. 19, 2004) (emphasis in original) (citing *Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115, 118 (5th Cir. 1982)).  If a party wishes to contest personal jurisdiction, that must be "his first defensive move."  *Golden*, 683 F.2d at 118 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391, at 855 (1969)).  In this case WG LLC—a law firm represented by legal counsel—decided to make two "defensive moves" before challenging personal jurisdiction under Rule 12(b)(2).  There is nothing extraordinary in finding that a litigant waived the 12(b)(2) defense in such circumstances.[5]

Based on the foregoing, the Court should conclude that WG LLC waived its personal jurisdiction defense and deny the Rule 12(b)(2) motion on that ground.

---

[5] An argument might conceivably be made that an exception to the waiver rule should be made for Rule 12(b)(1) subject-matter jurisdiction motions, as the Rule suggests that subject-matter jurisdiction is the primary threshold issue which must be considered "at any time." FED. R. CIV. P. 12(h)(3). But that exception would not apply here, as WG LLC filed both a 12(b)(1) and a 12(b)(6) motion before the 12(b)(2) motion.

2.   *Merits.*

Although the undersigned recommends that the Court deny WG LLC's 12(b)(2) motion based on waiver, this Report and Recommendation also addresses the merits of the argument.  For the reasons set out below, the motion should also be denied on its merits.

a.   Legal standard.

"The plaintiff has the burden of establishing that the court has personal jurisdiction."  *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016) (citation omitted).  To carry that burden, a plaintiff need only "make a prima facie showing."  *Id.* (citation omitted).  This is a "liberal standard."  *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 742 (N.D. Tex. 2018).  To determine whether Plaintiff has met his burden, "the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof."  *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992)).  Ultimately, the Court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation."  *Id.* (citations omitted).

There are two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.*"  Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).  Plaintiff does not allege general jurisdiction.  (*See* Docket Entry 99, at 8.)  Thus, the only question before the Court with respect to the merits of WG LLC's 12(b)(2) motion is whether the Court has specific jurisdiction over it.

A plaintiff must establish two things to establish specific jurisdiction over an out-of-state defendant—"*first*, that minimum contacts exist between the defendant and the state; and *second*, that the harm alleged arises out of or relates to the defendant's forum-related contacts."  *Thomas*

*v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 561 (S.D. Tex. 2021) (citing *Bulkley & Assocs. LLC v. Dep't of Indus. Rels., Div. of Occupational Safety and Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021); *Ford*, 592 U.S. at 362). If a plaintiff carries its burden as to these first two prongs of the specific jurisdiction analysis, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citation omitted).

*First prong: minimum contacts.* "The contacts needed . . . go by the name 'purposeful availment.'" *Ford*, 592 U.S. at 359 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Thus, to satisfy the first prong, a plaintiff must make a prima facie showing that the defendant has taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The contacts must have been "the defendant's own choice," rather than "random, isolated, or fortuitous." *Ford*, 592 U.S. at 359 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Those contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering into a contractual relationship centered there." *Ford*, 592 U.S. at 359 (quoting W*alden v. Fiore*, 571 U.S. 277, 285 (2014)).

*Second prong: relatedness.* Even where a defendant has purposefully availed itself of the privilege of doing business in the forum state, a plaintiff must also make a prima facie showing that its claims "arise out of or relate to the defendant's contacts" with the forum. *Ford*, 592 U.S. at 359 (collecting cases). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362. Ultimately, what is required is "an affiliation between the forum and the

underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.* at 359–60 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 264 (2017).

      *Third prong: fair play and substantial justice.*  Even when the first two prongs have been satisfied, a defendant may "defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271.  To do so, the defendant must show that maintenance of the suit would "offend traditional notions of fair play and substantial justice" *Ford*, 592 U.S. at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "Such a showing must be 'compelling.'" *Thomas*, 559 F. Supp. 3d at 561 (quoting *Sangha v. Navig8 Ship Mgmt. Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018)).  On this issue, the Court must consider five factors: "(1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies." *McCormick v. ICE Enter., LLC*, No. 4:22-CV-878, 2023 WL 5216478, at *6 (E.D. Tex. Aug. 14, 2023) (citing *Burger King Corp.*, 471 U.S. at 477).

      b.  Analysis.

      Plaintiff argues that WG LLC is subject to specific personal jurisdiction in Texas because it "place[d], or cause[d] another to place, telemarketing calls to consumers in Texas, for the purposes of retaining those Texas consumers for legal representation by Texas attorneys." (Docket Entry 99, at 8.)  Plaintiff further contends that, after cooperating with the callers to uncover their identities, WG LLC—in concert with the other Defendants—"served a retainer agreement to him for the purpose of providing legal representation in Texas, and repeatedly directed follow-up communications to him while knowing he was a resident of Texas." (*Id.*)

In support of these assertions, Plaintiff attached to his class action complaint copies of an attorney-employment contract, a health information disclosure authorization form, an administrative consent form, and a power-of-attorney form; he alleges he received these documents after providing an alias to the robocallers in an effort to discover their identities.  (*See* Docket Entry 1-1.)  WG LLC is listed as Plaintiff's would-be attorney on all of these documents. (*See id.*)  Plaintiff also attached a copy of one of the follow-up emails he alleges he received from WG LLC, soliciting his signature on the aforementioned documents.  (*See* Docket Entry 1-2.) Additionally, in his response to WG LLC's 12(b)(2) motion, Plaintiff attached verified screenshots of: (1) the front page of WG LLC's website, directing visitors to use a hyperlink to access a separate website for Camp Lejeune litigation; (2) a disclaimer and attorney bios from the Camp Lejeune website, listing Mikal Watts as part of the Camp Lejeune legal team; (3) Mikal Watts's attorney-profile page on the Texas Bar's website, which describes his firm as WG LLC and which lists his primary practice location as San Antonio, Texas; and (4) a *San Antonio Express News* article from 2021 about WG LLC's decision to relocate to Puerto Rico in order to "export" its legal services to Texas and elsewhere in the continental United States to benefit from a 2012 law capping income taxes at four percent for new exports businesses on the island.  (*See* Docket Entries 99-1– 99–6.)

WG LLC responds that Plaintiff failed to make a prima facie case of personal jurisdiction, as Plaintiff's class-action complaint "contains no jurisdictional allegation specific to WG LLC," and instead "lumps all defendants" together with general references.  (Docket Entry 100, at 5; *see also* Docket Entry 96, at 6.)  This is inadequate, WG LLC argues, because Plaintiff "must provide specific, individualized facts and/or statements of personal involvement or actions to make a prima facie case of personal jurisdiction."  (Docket Entry 96, at 6.)

In support of its 12(b)(2) motion, WG LLC included declarations of Mikal Watts—WG LLC's lead attorney in this matter—and his former law partner at WG LLP, Francisco Guerra. (*See* Docket Entries 96-1–2.)  In their declarations, they explain that Watts moved to Puerto Rico in 2020, at which time Guerra "agreed to continue his practice concerning individual personal injury cases under WG LLP in San Antonio," while Watts "would focus . . . on mass tort litigation under . . . WG LLC. . . in Guaynabo, Puerto Rico." (Docket Entry 96-1, at 4; Docket Entry 96-2, at 4.) Both declarants agree that Watts is "the President and principal owner of WG LLC." (Docket Entry 96-1, at 4; Docket Entry 96-2, at 3.)  Furthermore, both declarants attest that "[a]ll of the firm's Camp Lejeune cases are being handled by WG LLC, with WG LLP providing only administrative support." (Docket Entry 96-1, at 4; Docket Entry 96-2, at 4.)  Lastly, both declarants invariably deny that either WG LLC or WG LLP solicited prospective clients by phone or hired or authorized anyone else to do so on their behalf, and certainly never used or authorized others to use automated calls or artificial or pre-recorded voice messages.  (*See* Docket Entries 96-1–2.)

Resolving the conflicts in evidence in Plaintiff's favor, the Court finds that he carried his burden under the "liberal standard" applicable to personal jurisdiction.  *See Van Rooyen*, 295 F. Supp. 3d at 742; *Quintana*, 259 F. Supp. 2d at 556.  Based on all of the arguments and supporting materials presented, Plaintiff has at least made a prima facie showing that WG LLC purposefully availed itself of the benefits of doing business in Texas, and that his alleged injuries in this case relate to its Texas contacts.

WG LLC, although now operating out of Puerto Rico, exports its legal services into the United States, including Texas, and avails itself of the benefits of doing business here.  Texas is where WG LLP handles administrative support for some of its mass tort litigation—including the Camp Lejeune litigation implicated in this case.  (*See* Docket Entry 96-1, at 3–4; 96-2, at 3–4;

Docket Entry 99-6.)  And as late as August 8, 2023, Mikal Watts—the owner and president of WG LLC—advertised his services on the State Bar of Texas's website, representing that he worked for WG LLC in San Antonio, Texas, notwithstanding the relocation in Puerto Rico.  (*See* Docket Entry 99-1, at 2; Docket Entry 99-5, at 3.)

Plaintiff also has sufficiently alleged injuries related to WG LLC's Texas contacts.  He alleges that he was repeatedly solicited by telephone to file a claim in the Camp Lejeune litigation—*i.e.*, litigation handled by WG LLC, with administrative support from WG LLP.  (*See* CAC, at 3.)  Plaintiff alleges that, when he asked the callers *who* was soliciting his business, they were evasive, refusing to answer unless Plaintiff filed a claim in the Camp Lejeune litigation.  (*See* CAC, at 3–4.)  Plaintiff alleges he played along, providing an alias to uncover the identities of the callers.  (*See id.* at 4.)  From then on, Plaintiff alleges he received several documents which, if signed, purported to hire WG LLC to prosecute his Camp Lejeune claims on a contingency-fee basis and authorize the disclosure of Plaintiff's private health information to WG LLC.  (*See id.* at 4–5.)  Plaintiff further alleges that he "received at least 22 follow-up calls from Watts Guerra" to sign those documents.  (*Id.* at 5.)   Although WG LLC denies these allegations and provides contradicting declaratory evidence, at this stage the Court must resolve the conflicts in Plaintiff's favor.  Applying that rule, Plaintiff's allegations are sufficient to meet his prim facie burden.  *Cf. Thomas*, 559 F. Supp. 3d at 568 ("Here, Life Protect (allegedly) engaged in . . . calling numbers robotically at random. . . . [and] *wherever* it reache[d] a consumer with a robocall, Life Protect has purposefully availed itself of that state's laws.") (emphasis in original).

For the above reasons, the Court has personal jurisdiction over WG LLC unless it carries its burden of showing that the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice.  *See Ford*, 592 U.S. at 358.  Unlike the liberal prima facie showing

required of Plaintiff, WG LLC's contrary showing must be "compelling." *Sangha*, 882 F.3d at 102; *Thomas*, 559 F. Supp. 3d at 561. Indeed, "[i]t is highly uncommon for an assertion of jurisdiction to be unfair once minimum contacts have been established, meaning that the 'fair play and substantial justice' factor is rarely outcome determinative." *McCormick*, 2023 WL 5216478, at *6 (citing *Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-42, 2022 WL 3704537, at *10 (E.D. Tex. Aug. 26, 2022)). In this case, while WG LLC disputes Plaintiff's factual allegations supporting the existence of minimum contacts, it "does not make any attempt to satisfy its burden of showing that the Court's exercise of jurisdiction would be unfair or unreasonable." *McCormick*, 2023 WL 5216478, at *6. Thus, "in light of the steep burden" WG LLC bears on this point, its failure to address the issue is dispositive. Accordingly, even if it finds WG LLC did not waive its personal jurisdiction defense, the Court nevertheless should deny its Rule 12(b)(2) motion.

## C. *Failure to State a Claim: Defendants' 12(b)(6) Motion*.

### 1. *Legal standards*.

The Court may dismiss a cause of action in a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law," *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), or a plaintiff's failure to allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007). When analyzing a motion to dismiss for failure to state a claim, the Court accepts "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 344 (5th Cir. 2013). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In short, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.  This "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [pertinent] evidence. . . ." *Id.*

Although facts alleged in the complaint are presumed to be true, the Court does not extend this presumption of veracity to "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citations omitted).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  "But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation." *Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024).

Generally, "[i]n determining whether to grant a motion to dismiss, the district court must not go outside the pleadings." *Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 596 (S.D. Tex. 2020) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). However, there are three exceptions to this proscription: the Court may consider (1) documents attached to the complaint; (2) matters of which judicial notice may be taken; and (3) documents attached to the motion to dismiss that are both (a) referred to in the complaint and (b) central to

the plaintiff's claims.  *See Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  But even when considering these additional materials, the Court "is still bound to draw all inferences in favor of the plaintiff." *Wood v. Bexar Cnty., Tex.*, No. 22-50888, 2023 WL 3563012, at *1 (5th Cir. May 19, 2023) (citing *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 413 (5th Cir. 2021)).

"When 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence."  *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  If the Court elects to consider such materials—*i.e.*, attachments which are either not referred to in the complaint or not central to any of the claims therein—then the motion to dismiss "must be treated as a motion for summary judgment."  *Causey*, 394 F.3d at 288; *see Hernandez v. Morales*, No. 7:13-CV-234, 2014 WL 794201, at *1 (S.D. Tex. Feb. 25, 2014) ("If the Court does consider matters outside the pleadings, then the Court has converted the motion to dismiss into a motion for summary judgment.").

2.  *Analysis.*

Before proceeding to the merits of Defendants' motion, the Court must address two threshold matters.  First, Plaintiff argues that the Court must disregard Defendants' 12(b)(6) motion because, with the exception of WG LLC, they filed answers to his class action complaint after the 12(b)(6) motion was filed but before the Court has ruled on it.  (Docket Entry 97, at 7.)  According to Plaintiff, "the filing of an answer before a court has ruled upon a pending motion to dismiss moots that motion."  (*Id.*)  Plaintiff cites one unpublished district court case from the District of Delaware to support this proposition.  *See Telebrands Corp. v. 1ByOne Prod. Inc.*, No. CV 17-997-JFB-SRF, 2017 WL 5593785, at *2 (D. Del. Nov. 21, 2017) ("When an answer is filed prior to the

resolution of a motion to dismiss, the motion to dismiss becomes moot.").  However, the Fifth

Circuit has expressly held the opposite in a published case: when a defendant has filed a motion to

dismiss, "they [a]re not obligated to wait to answer until the court ha[s] ruled on the motion."

*Brunig v. Clark*, 560 F.3d 292, 294 (5th Cir. 2009).  Thus, Defendants' 12(b)(6) motion is not moot

as to the four Defendants who have filed answers in this case.

       The second threshold matter concerns the fact that Defendants attached five declarations

to their motion to dismiss.  (*See* Docket Entry 95-1–5.)  Because the class action complaint does

not refer to any of these declarations—nor could it—they are matters outside the pleadings.  *See*

*Causey*, 394 F.3d at 288.  As such, the Court must either disregard these declarations and press on,

or convert the motion to dismiss into a motion for summary judgment.  *See id.*; *Hernandez*, 2014

WL 794201, at *1.  This Report and Recommendation adopts the first approach.  *See Gen. Retail*

*Servs., Inc.*, 255 F. App'x at 783.  Accordingly, Defendants' 12(b)(6) motion will remain just that,

and the Report and Recommendation disregards the attached declarations, without prejudice to the

declarations being considered at later stages of the case.

       On the merits, Defendants advance three arguments in their motion.  First, they argue that

Plaintiff failed to allege that he was charged for any of the automated calls he received—something

Defendants contend is an indispensable element of any claim under 47 U.S.C. § 227(b)(1)(A)(iii).

(*See* Docket Entry 95, at 3.)  Second, they argue that Plaintiff failed to specify that any particular

Defendant made or caused to be made any of the automated phone calls.  (*Id.* at 4.)  Third,

Defendants argue that Plaintiff has pleaded insufficient facts to plausibly show that any of the

Defendants made the calls themselves, directed others to make the calls, or ratified said calls.  (*Id.*

at 4–10.)  Each argument is considered in turn.

a.  Statutory interpretation.

Defendants cite no caselaw to support their first argument—that it is an essential element of a claim under 47 U.S.C. § 227(b)(1)(A)(iii) that the plaintiff was charged for the automated phone call he received.  (*See* Docket Entry 95, at 2–3.)  Plaintiff responds that the statute does not, in fact, always require that the recipient be charged for the call, because that condition "is part of a disjunctive list of criteria which also includes delivery of robocalls to a cellular telephone service."  (Docket Entry 97, at 4.)  Plaintiff likewise cites no caselaw to support its contention.  (*See id.*)  In the absence of cited precedent, this Report and Recommendation considers Defendants' argument solely by reference to the statute.

"As always, statutory interpretation begins 'with the plain language and structure of the statute.'"  *Moore v. Bryant*, 853 F.3d 245, 252 (5th Cir. 2017).  Plaintiff's class action complaint alleges a single claim under § 227(b)(1)(A).  (*See* CAC, at 11.)  That provision makes it unlawful to make non-emergency or non-consensual calls "using any automatic telephone dialing system or an artificial or prerecorded voice" in three instances; relevant to this case, it prohibits such calls to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call," with the exception (not relevant here) of calls made regarding debts owed to or guaranteed by the United States.  47 U.S.C. § 227(b)(1)(A)(iii).

The question in this case is whether the provision prohibiting calls to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call" limits the statute only to those instances in which the called party is charged for the call.  In this regard, the undersigned notes that the charged-call provision is preceded by the word "or."

The word "or" is "almost always disjunctive." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018).  That is, it "create[s] alternatives." *Conjunctive/Disjunctive Canon*, BLACK'S LAW DICTIONARY (11th ed. 2019).  If that normal reading is applied here, then an automated call made to a telephone number assigned to a cellular service, for example, would suffice to come within the statute's ambit without the additional requirement that the recipient be charged for the call— and vice versa.  One *or* the other would do.

Defendants' argument appears to be that Congress's decision to add the catch-all "or any service for which the called party is charged for the call" at the end of the list of protected types of services was meant to *modify* the preceding listed services, revealing that they are additionally conditioned on the recipient's being charged for the call.  This interpretation is unnatural absent the express inclusion of the word "other" between the words "any" and "service."  *Cf., e.g.*, *United States v. Mackay*, 757 F.3d 195, 197–98 (5th Cir. 2014) ("The word 'other' or 'any other' following an enumeration of particular classes ought to be read as 'other such like' and to include only those of like kind or character.").  Congress did not include the word "other" before the charged-call provision—an omission that is particularly telling since it *did* include "other" just six words earlier, to modify "radio common-carrier service."  In such circumstances, the Court must interpret the omission of the term "other" before the charged-call provision as deliberate.  To do otherwise would violate the rule that the Court "must interpret the statute, not rewrite it."  *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).

Accordingly, Defendants' first argument in support of their motion to dismiss fails.

> b.   Failure to plead sufficient factual support.

Defendants' second and third arguments will be taken up together.  Defendants argue that, while Plaintiff does allege he received automated calls from a rotating series of phone numbers,

he "makes no allegation that any particular Defendant . . . made, or directed to be made, these calls." (Docket Entry 95, at 3–4.)  Without such specificity, Defendants contend, Plaintiff failed to state a plausible claim against any of the Defendants for a TCPA violation.  (*See id.*)  Defendants further argue that Plaintiffs' threadbare factual allegations do not support a reasonable inference that they are directly or vicariously liable for any TCPA violations.  (*See id.* at 4–10.)  Plaintiff responds that, while "unable to identify which of the Defendants [in particular] placed, or caused to be placed, the robocalls," he did eventually "identify Defendants as the entities responsible for those robocalls." (Docket Entry 97, at 4.)  Plaintiff argues that his allegation of Defendants' joint involvement "is supported by . . . the retainer attached to the complaint, and the follow-up communications thereafter."  (*Id.*)  From these allegations and supporting documents[6], Plaintiff argues the Court may reasonably infer that Defendants are vicariously liable because they apparently authorized[7] or ratified[8] the initial callers' TCPA violations  (*See id.* at 14–21.)

---

[6] To recap, the documents Plaintiff attached to his class action complaint—which he alleges he received "after submitting a pseudonym[ous] Camp Lejeune claim" to the robocallers—were (1) a contract to hire WG LLC, Biltmore, Boxer, and Henson to prosecute his Camp Lejeune claim for a contingency fee; (2) a form authorizing the disclosure of Plaintiff's private health information to WG LLC; (3) a form authorizing WG LLC to file an administrative claim arising from his exposure at Camp Lejeune; (4) a form granting WG LLC power of attorney for Plaintiff; and (5) an email from WG LLC and Biltmore, soliciting Plaintiff's signature on the aforementioned documents. (*See* Docket Entry 97, at 4; Docket Entry 1-1, at 2–9; Docket Entry 1-2, at 2.) Plaintiff points out that these documents—which he alleges he received from Defendants after he cooperated with the initial callers—"incorporate[ed] the information Plaintiff provided to the initial caller[s]." (Docket Entry 97, at 15.)

[7] "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." RESTATEMENT (SECOND) OF AGENCY § 27 (1958).

[8] *See Insurasource, Inc. v. Fireman's Fund Ins. Co.*, No. 2:11-CV-82-KS-MTP, 2012 WL 1365083, at *3 (S.D. Miss. Apr. 19, 2012) ("[A] principal may ratify an agent's action 'by receiving ore retaining benefits it generates. . . .'").

Given Plaintiff's allegations that he was solicited by robocallers to file a Camp Lejeune claim, that the callers refused to identify themselves or the law firms on whose behalf or for whose benefit they were calling unless Plaintiff agreed to file such a claim, and in light of the documents Plaintiff received from WG LLC, Biltmore, Boxer, and Henson after agreeing (under a pseudonym) to file said claim, the Court should find that Plaintiff has raised a plausible claim against these Defendants. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bryant*, 2024 WL 890122, at *2 (citation omitted). Plaintiff's complaint and supporting information allows the Court to draw a reasonable inference of liability here.

Defendants' argument that more specificity was required at this stage is untenable. To require more would effectively immunize savvier TCPA violators from liability—*i.e.*, those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations. Or, as Plaintiff put it, "Defendants' argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." (Docket Entry 97, at 5.) Thus, given the practical realities of these sorts of violations—a TCPA claim is plausible when it relies on reasonable inferences drawn from the later-revealed identity of the caller or their beneficiary. Requiring anything more would demand speculation by the plaintiff—and allow speculation by Defendant; as the Fifth Circuit has recently explained, neither sort of speculation is appropriate. *See Bryant*, 2024 WL 890122, at *3 ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation."). For these reasons, Plaintiff's allegations, along with the corroborating documentation attached to his class action complaint, suffice to permit a reasonable

inference that WG LLC, Biltmore, Boxer, and Henson are liable for the TCPA violations alleged. Accordingly, as to those four Defendants, the remaining Rule 12(b)(6) arguments likewise fail.[9]

## IV.   Recommendation.

Based on the foregoing, I recommend that Defendants' Motion to Dismiss Plaintiff's Class Action Complaint Under Rule 12(b)(1) (Docket Entry 94) be **GRANTED** as to WG LLP, but **DENIED** as to the other Defendants; that WG LLC's Motion to Dismiss Plaintiff's Class Action Complaint Under Rule 12(b)(2) (Docket Entry 96) be **DENIED**; and that Defendants' Motion to Dismiss Plaintiff's Class Action Complaint Under Rule 12(b)(6) (Docket Entry 95) be **DENIED AS MOOT** as to WG LLP, and **DENIED** as to the other Defendants, without prejudice to consideration of extra-pleading documents they submitted at later stages in the case.

## V.   Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed within **fourteen (14) days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

---

[9] As previously discussed, the absence of such corroborating documentation was fatal to the traceability of Plaintiff's alleged injuries to any conduct by WG LLP.  *See* Part III(A)(2), *supra.* For that reason, the undersigned has recommended that Defendants' 12(b)(1) motion (Docket Entry 94) be granted as to WG LLP for lack of standing.  Accordingly, Defendants' 12(b)(6) motion (Docket Entry 95) is now moot as to WG LLP and may be denied as such.  To the extent the Court finds the Rule 12(b)(1) and Rule 12(b)(6) analyses so intertwined that it should address the merits of WG LLP's 12(b)(6) argument, *see* note 4, *supra*, then it should grant Defendants' 12(b)(6) motion as to WG LLP, as Plaintiff's class action complaint and supporting documentation do not permit a reasonable inference that WG LLP is liable for the TCPA violations alleged. *See Iqbal*, 556 U.S. at 678.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  Absent leave of Court, **objections are limited to twenty (20) pages in length**. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections.  *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 23, 2024.

Henry J. Bemporad
United States Magistrate Judge