**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| Craig Cunningham,<br><br>    Plaintiff,<br><br>    v.<br><br>Watts Guerra, LLP, Mikal C. Watts, Watts Guerra, LLP; Francisco Guerra IV, Watts Guerra, LLP; Paige Boldt, Watts Guerra LLP; Berken Media, LLC, Robert Kenyon, Natural Person and Corporate Officer of Berken Media, LLC; and John/Jane Does 1-5,<br><br>    Defendants. | CONSOLIDATED CASE NO. SA-22-CV-00363-OLG |
| Craig Cunningham, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Watts Guerra, LLP, Watts Guerra, LLC, Henson Fuerst, P.A., Law Office of Douglas Boxer, and Biltmore Law Group, PLLC,<br><br>    Defendants. | CASE NO. SA-23-CV-00910-OLG |

**DEFENDANTS' WRITTEN OBJECTIONS**
**TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**
**THAT DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT BE DENIED**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

NOW COME Watts Guerra LLP, Mikal C. Watts, Francisco Guerra, IV, and Paige Boldt (collectively referred to as "Defendants"), and file their Written Objections to the Magistrate's Report and Recommendation (the "R&R") that Defendants' Motion for Summary Judgment Be Denied (the "Objections"). In support thereof, Defendants would respectfully show the Court as follows:

## I.  SUMMARY OF THE OBJECTIONS AND ARGUMENT

Defendants filed a Motion for Summary Judgment and Supplemental Motion for Summary Judgment (collectively, the "Motion") on all of Plaintiff's claims for purported violations of the Telephone Consumer Protection Act ("TCPA"), its regulations, and corresponding Texas state law. (ECF 11, 72). This Court referred the Motion to the United States Magistrate Judge Henry J. Bemporad. On March 18, 2025, the Magistrate issued his R&R, recommending denial of Defendants' Motion. (ECF 121).

As the Magistrate discussed—and Plaintiff admits—the sole issue for determination in the Motion is whether Defendants are vicariously liable for the unsolicited telephone calls Plaintiff received. To that end, the Magistrate found that a genuine issue of material fact exists as to whether the TCPA violating calls were made with Defendants' actual authority, and/or whether Defendants ratified such calls. (ECF 121 at 9-13). Defendants object to both of these findings.

More specifically, with respect to actual authority, the Magistrate's R&R is premised entirely on the mistaken belief that a written contract exists (or existed) between Principal Law Group, LLP ("PLG") and Defendants, and that this alleged contract—which is not part of the summary judgment record—is the "best evidence" of whether Defendants granted PLG actual authority to make the calls. (ECF 121 at 9-11). To that

end, the Magistrate seemingly granted Plaintiff's objection to the affidavit of Alicia D. O'Neill pursuant to Federal Rule of Civil Procedure 1002. Based on those two erroneous rulings/findings, the Magistrate held that Defendants failed to meet their initial summary judgment burden, and that a genuine issue of material fact exists as to actual authority. (*Id.*). In addition to objecting to the Magistrate's granting Plaintiff's Rule 1002 objection, Defendants object to the Magistrate's factual finding that a contract exists between Defendants and PLG, because such a contract does not, nor ever has, existed. As both the evidence in the summary judgment record and the evidence attached to this Objection demonstrate, there is not, nor ever has been, a written contract between Defendants and PLG—much less one authorizing PLG to make unsolicited marketing calls on Defendants' behalf. As such, Defendants object to the Magistrate's finding that Defendants failed to meet their summary judgment burden, and that a fact issue exists as to actual authority.

Next, with respect to ratification, the Magistrate found that there was sufficient circumstantial evidence of Defendants' imputed and supposed knowledge that such unlawful calls were made. (ECF at 12-13). Defendants object to both this factual finding and the Magistrate's legal basis for it. With respect to the legal basis, the Magistrate cites only two cases to support its finding—*Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020) and *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471 (9th Cir. Apr. 5, 2022). But neither case supports the Magistrate's finding on ratification, thus Defendants object to the Magistrate's use and misciting of them in the R&R. Likewise, the Magistrate's factual findings are erroneous. To support his circumstantial finding of knowledge, the Magistrate points only to the fact that PLG had apparently already been sued on a prior occasion for TCPA violations, and that Defendants have previously been scammed by other referral sources wholly unrelated to the lead generators whom they

did not ever hire here.  (ECF 121 at 12-13).  Neither of those facts, however, raise any inference—much less a fact issue—that Defendants had actual knowledge of the allegedly offending calls PLG, or any of its agents, made here.

Accordingly, for all the reasons explained more fully below, the Court should reject the Magistrate's R&R and grant Defendants' Motion for Summary Judgment.

## II.    EVIDENCE ATTACHED TO OBJECTIONS

Defendants attach a true and correct copy of the following evidence to this Objection:

Exhibit A - Affidavit of Alicia D. O'Neill

## III.    STANDARD OF REVIEW

"When a party files timely written objections to a magistrate judge's report and recommendation, the district judge 'must make a *de novo* determination of those portions of the report or specified findings or recommendations to which objections is made.'" *Burns v. Nielsen*, 456 F. Supp.3d 807, 818 (W.D. Tex. 2020) (quoting. 28 U.S.C. § 636(b)(1)). "Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination of the basis of that record." *Scott v. Pyles*, 596 F. Supp.3d 623, 627 (S.D. Miss. 2022).   However, "a district court may at its discretion view new evidence raised for the first time in an objection to a magistrate judge's report and recommendation." *Morales v. Singh*, No. P:23-CV-00043-DC, 2025 WL 97645, at *1 (W.D. Tex. Jan 14, 2025); *see also Smith v. Palafox*, 728 Fed. Appx. 270, 275 (5th Cir. 2018) ("In this circuit, when objecting to a magistrate judge's report and recommendation on summary judgment, litigants may submit additional evidence for the district court's de novo review [but] the district court has discretion to determine whether, in the light of all pertinent circumstances, the new evidence should be accepted.").  "After completing its review of the report, the district judge may accept,

4

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Burns*, 456 F. Supp.3d at 818 (internal citations omitted).

## IV.    ARGUMENT & AUTHORITIES

**A.    Defendants Object to the Magistrate's Finding that a Genuine Issue of Material Fact Exists as to Whether the TCPA Violating Calls Were Made with Defendant's Actual Authority**

As his first basis for denying Defendants' Motion, the Magistrate held that there is a fact issue as to whether PLG had actual authority from Defendants to make the TCPA violating calls to Plaintiff. (ECF 121 at 9-11). The Magistrate's only factual basis for this finding is his belief that "Defendants contracted with PLG for Zantac-related marketing." (*Id.* at 9; *see also id.* ("Defendants directly contracted [with] PLG.")). But as he admits in the R&R, "the [purported] contract between Defendants and PLG is not in the record." (*Id.*). In fact, nowhere in any of Plaintiff's filings, including his summary judgment briefing, does he even allege that such a contract exists. (*See generally* ECF 1, 15, 16, 108). As such, Defendants had no reason to deny the existence of such a contract; but, Defendants certainly do deny it now. Nevertheless, the Magistrate found that this phantom contract—which he assumed exists—*might* include language wherein Defendants authorized PLG to engage in a telemarking campaign on their behalf, and that the *absence* of this evidence in the record was somehow enough to create a genuine issue of material fact as to actual authority. (*Id.* at 9-11). In doing so, the Magistrate also seemingly granted Plaintiff's objection to the prior affidavit of Alicia D. O'Neill pursuant to Federal Rule Evidence 1002. Given these two findings/rulings, the Magistrate held that Defendants failed to meet their initial summary judgment burden to show they did not authorize the TCPA offending calls to Plaintiff. Defendants object to each of these findings.

**1.       Defendants Object to the Magistrate's Finding that a Contract Existed Between Defendants and Principal Law Group, LLP**

Defendants first object to the Magistrate's finding that a written contract exists between Defendants and PLG, and that this alleged contract contained terms wherein Defendants somehow authorized PLG's telemarketing campaign.  (ECF 121 at 9-11).  In reality, no such contract exists.

Indeed, as set forth in the attached Declaration of Alicia D. O'Neill, there is not, nor ever has been, a written contract between Defendants and PLG.  (Ex. A ¶ 3).  Further, Defendants never authorized PLG—either in writing or orally—to make unsolicited telephone calls on their behalf.  (*Id.* at ¶ 4).  Given that the Magistrate's finding of a fact issue as to actual authority is based *entirely* on the purported existence of a written contract between PLG and Defendants, which has never in fact existed, it is well within this Court's discretion to consider Ms. O'Neill's Declaration in support of these objections.  *See Palafox*, 728 Fed. Appx. at 275.  To be sure, it would be manifestly unjust to allow the Magistrate's finding to stand given the non-existence of such a contract on which his finding is somehow based.  To hold otherwise would result in the absurdity of Defendants' Motion being denied only because they failed to disprove the existence of a non-existent contract.

In summary, because there is not, nor ever has been, a written contract between Defendants and PLG, there cannot be any terms in such non-existent contract authorizing PLG to engage in unsolicited telephone calls on Defendants' behalf.  Accordingly, the Magistrate's finding is erroneous, and Defendants object to the same.

**2.       Defendants Object to the Magistrate's Purported Granting of Plaintiff's Objection to the Previous Affidavit of Alicia D. O'Neill Based on Federal Rule of Evidence 1002**

As part of its overall finding of a fact issue as to actual authority, the Magistrate seemingly granted Plaintiff's objection to the previous affidavit of Alicia D. O'Neill pursuant to Federal Rule of Evidence 1002. (ECF 121 at 10). In that affidavit, Ms. O'Neill testified unequivocally that Defendants engage marketing companies *only* to market online or through radio and television, and that Defendants have never authorized any advertising firm to engage in outgoing, unsolicited telephone calls. (ECF 11-4 at ¶ 7). She also testified that she oversaw searches of Defendants' databases and determined that there are no records of any third-party telemarketers with which Defendants engaged. (*Id.* at ¶¶ 18-19). It is the latter of these two paragraphs (18 and 19) to which Plaintiff objected under Rule 1002, otherwise known as the "best evidence rule."

The Magistrate stated that the Plaintiff's objection was "well taken," which Defendants assume to mean the objection was granted. (ECF 121 at 10). The Magistrate's ruling was improper for three reasons. First, contrary to what the Magistrate states in the R&R, Plaintiff did not object to paragraph 7 of the affidavit, but only to paragraphs 18 and 19. (ECF 86 at 14). In other words, Plaintiff did not object that "to use O'Neill's general statement in her affidavit as evidence of the specific terms of the contract between Defendants and PLG would violate the best evidence rule." (ECF 121 at 10). Second, to the extent Plaintiff's Rule 1002 objection did go to a purported contract between PLG and Defendants, such objection is now moot with the evidence the Court now has before it that no such contract has ever existed. (Ex. A at ¶ 3). Third, as pointed out in Defendants' Reply, but which the Magistrate apparently ignored, the advisory committee notes to Rule 1002 state expressly that "***the rule does not apply to testimony that books or records have been examined and found not to contain any reference to a designated matter***." Fed. R. Evid. 1002 advisory committee's note (emphasis added); *see also United States v. Diaz-Lopez*, 625 F.3d 1198, 1202 (9th Cir. 2010) (applying the advisory committee's note for FRE

1002 to the search of a computer database). That is exactly what Ms. O'Neill did in paragraphs 18 and 19 of her original affidavit—she testified that records had been examined and were found not to contain reference to a designated matter (i.e. reference to any of the individuals or entities Plaintiff alleges were Defendants' agents).

For all these reasons, Defendants object to the Magistrate's ruling granting Plaintiff's objection to Ms. O'Neill's original affidavit based on Rule 1002.

### 3.    Defendants Object to the Magistrate's Finding that They Failed to Meet Their Initial Summary Judgment Burden to Show They did Not Authorize the Calls to Plaintiff

Building on the findings discussed above regarding the existence of a contract between Defendants and PLG, the Magistrate concluded that "as the party moving for summary judgment, Defendants bear the initial burden of 'pointing to competent evidence in the record'—*in this case, their contract with PLG*." (ECF 121 at 10 (emphasis added)). Therefore, "because Defendants have not provided the only competent evidence as to whether PLG was authorized to engage in telemarketing on its behalf [i.e. the alleged contract] . . . Defendants have failed to meet their initial summary judgment burden." Defendants likewise object to this finding.

To begin, as discussed above, because there is not, nor ever has been, any contract between PLG and Defendants (Ex. A at ¶ 3), such non-existent contract cannot be "the only competent evidence as to whether PLG was authorized to engage in telemarketing on [Defendants'] behalf." (ECF 121 at 10). As such, the entire foundation upon which the Magistrate found that Defendants failed to meet their initial summary judgment burden collapses. What is left is Ms. O'Neill's uncontroverted testimony here, not only that Defendants have never hired or authorized a marketing company to advertise through outgoing, unsolicited telephone calls, but also that Defendants never authorized PLG—

via contract or otherwise—to make unsolicited telephones calls on their behalf.  (ECF 11-4 at ¶ 7; Ex. A at ¶ 4).

Further, for actual authority to exist in TCPA cases, "the relevant inquiry is whether the principal controlled—or had the right to control—the manner and means of the telemarketing campaign," and such level of control "must be high and very significant." *Heller v. Marriott Vacations Worldwide Corp.*, No. EP-22-CV-398-FM-MAT, 2023 WL 67002696, at *5 (W.D. Tex. Oct. 11, 2023) (internal citations omitted), *report and recommendation adopted*, No. EP-22-CV-00398-FM, 2024 WL 1080443 (W.D. Tex. Feb. 2, 2024).  Defendants' summary judgment evidence satisfies their initial burden to show they did not control, or have the right to control, any telemarketing campaign in which PLG, or any other entity, engaged.  (ECF 11-4 at ¶ 7; Ex. A at ¶ 5).  Having satisfied their initial burden, the burden shifted to Plaintiff to "show more than simply that there is some metaphysical doubt as to the material facts."  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).  At the end of the day, Plaintiff's briefing does not satisfy this burden.  Indeed, the Magistrate's R&R does not discuss any evidence produced by the Plaintiff that indicates Defendants controlled, or had the right to control, PLG's telemarketing campaign, much less that any such control was "high and very significant."  *Heller*, 2023 WL 67002696, at *5.  That is because there is no such evidence.  In fact, the Magistrate admitted that the "connection between the TCPA-violating calls and Defendants" was "attenuated."  (ECF 121 at 9).  Nevertheless, he based his finding entirely on a purported contract that, in reality, does not exist.  (Ex. A at ¶ 3).  Because Defendants satisfied their initial summary judgment burden as to the lack of actual authority, and Plaintiff failed to come forward with any evidence to create a genuine issue of material fact as to the same, the Magistrate's finding is in error.  Defendants, therefore, object and ask the Court to reject this finding.

**B.     Defendants Object to the Magistrate's Finding that a Genuine Dispute of Material Fact Exists as to Whether Defendants Ratified the Conduct of PLG**

As his second basis for recommending denial of Defendants' Motion, the Magistrate found that circumstantial evidence was sufficient to create a genuine issue of material fact that Defendants ratified the conduct of PLG in making TCPA-violating calls. (ECF at 11-13). Defendants object to this finding.

The Magistrate's finding is erroneous in two ways. First, he relied only on two inapposite cases to support the finding. Second, neither of the two pieces of circumstantial evidence the Magistrate relies upon create a fact issue that Defendants had actual knowledge of the unlawful calls made by PLG. Accordingly, this Court should reject the Magistrate's finding of a fact issue as to ratification.

**1.     Black Letter Law of Ratification**

As the Restatement sets forth, ratification is the "affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (2006). However, a purported principle "is not bound by ratification made *without knowledge of material facts involved in the original act*." *Heller*, 2023 WL 67002696, at \*7 (quoting RESTATEMENT (THIRD) OF AGENCY § 4.06) (emphasis added). Thus, in a TCPA case, "for the Defendant to be held vicariously liable under an agency theory of ratification, *it must have been aware of any unlawful calls made* by [the purported agent} and did not object or repudiate any benefits to it." *Id.* (emphasis added). A ratification "is not effective unless it encompasses the entirety of an act, contract, or other single transaction." RESTATEMENT (THIRD) OF AGENCY § 4.06 (2006). The burden of establishing that a ratification was made with knowledge is on the party attempting to establish ratification occurred." *Id.* § 4.06 cmt. b.

**2.      Defendants Object to the Magistrate's Reliance on *Sulyma* and *McCurley***

To support his finding on ratification, the Magistrate cites only two cases: *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020) and *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471 (9th Cir. Apr. 5, 2022).  Defendants object to the Magistrate's citation to and reliance upon these two cases.  Both cases are legally and/or factually inapposite and thus do not support a finding of ratification here.

First, *Sulyma* has nothing to do with the TCPA or ratification.  Instead, the Supreme Court in that case addressed only the actual knowledge requirement sufficient to trigger ERISA's three-year statute of limitations period.  *Sulyma*, 589 U.S. at 178.  Despite that obvious difference, the Magistrate cited *Sulyma* for the proposition that actual knowledge can be proved through "inference from circumstantial evidence" or "evidence of willful blindness." (ECF 121 at 12, 13 (quoting *Sulyma*, 589 U.S. at 189-90)).  Although those statements may be true in a vacuum, and particularly with respect to determining when ERISA's statute of limitations begins to run, it does not change the fact that in the Fifth Circuit, ratification for TCPA purposes requires actual knowledge that unlawful calls were made.  *Heller*, 2023 WL 67002696, at *7.  Here, as explained more fully below, there is no circumstantial evidence that Defendants had actual knowledge or were willfully blind to PLG's unlawful phone calls.

Second, the Magistrate cites *McCurly* for the proposition that "Defendants' and their agents'[1] heightened awareness of unscrupulous lead generators[2] should have prompted them to take greater care when accepting the benefits of leads they received."

---

[1] It is unclear what "agents" of Defendant the Magistrate is here referring.  Regardless, the only relevant knowledge is that of Defendants—specifically their actual knowledge of the offending calls—not the knowledge of any purported agents.  *Heller*, 2023 WL 67002696, at *7

[2] As discussed in more detail below, Defendants did not have any such "heightened awareness" of prior TCPA violations here—either by PLG or generally in the industry.

(ECF 121 at 13 (citing *McCurley*, 2022 WL 1012471, at *2-3)).  But *McCurley* is so factually distinct from the facts here that it provides no support for the Magistrate's finding whatsoever.  Indeed, the primary distinction can be seen from the very first sentence of the opinion: "Royal Seas Cruises, Inc. **hired** Prospects DM, Inc. to generate leads and ***initiate calls to prospective consumers*** for cruise packages."  *McCurley*, 2022 WL 1012471, at *1 (emphasis added).  Here, by contrast, Defendants did not hire PLG, nor did they have a contract with PLG (Ex. A at ¶ 3), much less hire PLG to initiate unsolicited calls to prospective clients.  (*Id.* at ¶ 4; ECF 11-4 at ¶ 7).

The dissimilarities between *McCurley* and the facts here only build from there.  First, unlike Defendants here, the plaintiff in *McCurley* "knew that Prospects placed calls using prerecorded voices, a prima facie violation of the TCPA."  *McCurley*, 2022 WL 1012471, at *2.  Here, Defendants did not know of such calls.  Also unlike here, the plaintiff "knew that it received 2.1 million [ ] transferred calls from Prospects" over a nearly 18-month period.  *Id.*  Further, the plaintiff "knew that of the 560 customers whom Prospects [ ] transferred and who made purchases from [the plaintiff] 13 percent had phone numbers that did not match the customer consent data that Prospects had provided [ ] and 31 percent did not have a matching phone number and last name."  *Id.* at *3.  Finally, there was evidence that that plaintiff's employees "knew of these discrepancies because [ ] they spoke with the transferred customers."  *Id.*  It was all these facts in *McCurley*, combined with "widespread TCPA violations in the cruise industry," that lead the Ninth Circuit to conclude that a fact issue existed as to the plaintiff's ratification of the TCPA violations.  *Id.*

None of these facts from *McCurley* are present here.  Indeed, Defendants certainly did not know that PLG used prerecorded voice calls.  That only makes sense given that Defendants never hired PLG in the first place to make unsolicited calls on their behalf.

(Ex. A at ¶¶ 3-4; ECF 11-4 at ¶ 7).  Likewise, Defendants did not receive millions of transferred calls from PLG.  (Ex. A at ¶ 6).  In addition, Defendants were not aware of any discrepancies with potential client information received from PLG before the filing of Plaintiff's Complaint.  (*Id.*).  Finally, unlike the defendants in *McCurley*, Defendants here had no knowledge of "widespread TCPA violations" in the mass torts industry prior to the filing of Plaintiff's Complaint. (*Id.* at ¶ 8).

For all these reasons, the Magistrate's reliance on *Sulyma* and *McCurley* was misplaced, and those cases do not support his finding of a fact issue as to ratification.

### 3. Defendants Object to the Magistrate's Finding that Certain Circumstantial Evidence Created a Fact Issue on Ratification

In his R&R, the Magistrate admitted that the deposition testimony of Brad Johnson, "standing on its own," was insufficient to create a fact issue as to Defendants' knowledge of PLG's unlawful calls necessary for finding of ratification.  (ECF 121 at 12).[3] Nevertheless, the Magistrate held that "additional circumstantial evidence," combined with Mr. Johnson's testimony, "could support a knowledge finding by a reasonable jury." (*Id.*).  Defendant's object that this "additional circumstantial evidence" supports such a finding.

There are only two pieces of circumstantial evidence the Magistrate cited to and relied upon.  First, the Magistrate focused on the fact that "PLG had apparently already been sued on at least one prior occasion for TCPA violations, where it subcontracted with Elite, and Elite, in turn, subcontracted to yet another entity."  (ECF 121 at 12).  But prior to discovery in this lawsuit, Defendants had no prior knowledge that PLG had previously been sued for TCPA violations.  (Ex. A at ¶ 7).  Moreover, Defendants had no reason to

---

[3] In their supplemental reply brief, Defendants explained in detail why Mr. Jonson's testimony did not create a fact issue on any theory of vicarious liability, including the actual knowledge requirement of ratification.  (ECF 109).

investigate PLG with regard to such violations given that they never contracted with PLG in the first place, and in all events, had "never . . . authorize[d] any advertising firm to make outgoing, unsolicited telephone calls as part of marketing." (Ex. A at ¶¶ 3-4; ECF 11-4 at ¶ 7).

Second, the Magistrate highlighted that "Defendants themselves have previously 'been scammed' by lead generators." (ECF 121 at 13 (citing *Nguyen v. Watts*, 605 S.W.3d 761 (Tex. App.—Houston [1st Dist.] 2020, pet. denied)). The Magistrate's reliance on the previous "scamming" of Defendants in *Nguyen* as circumstantial evidence is misplaced for several reasons. First, *Nguyen* dealt with conduct from almost fifteen years ago involving Defendants' predecessor entity, Watts Guerra Craft, LLP ("WGC"). *Watts*, 605 S.W.3d at 768-769. Second, this was almost a decade before Ms. O'Neill became the managing partner of Watts Guerra's mass tort office. (ECF 11-4 at ¶ 5). Third, and more importantly, the alleged scamming in *Nguyen* did not involve violations of the TCPA, nor telemarketing at all for that matter. Instead, the offending parties there—whom, unlike here, WGC hired directly—manufactured a false claimant list by picking out individuals with a Vietnamese surname from a phone book and listing them as fisherman-claimants even though they had not given permission to be identified by a claimant or agreed to be represented by WGC. *Watts*, 605 S.W.3d at 768-769. Put simply, there is nothing from WGC's experience in *Nguyen* that could have given them knowledge—or put them on notice—of PLG's TCPA violating actions here or in the past.

By the Magistrate's own admission, with these two pieces of alleged circumstantial evidence eliminated, there is no other evidence in the summary judgment record to support a fact issue on ratification. (ECF 121 at 12). But as explained above, this circumstantial evidence is no evidence at all. Accordingly, Defendants object to the Magistrate's reliance on this so-called circumstantial evidence to support his finding on

14

ratification in the R&R.

**C.    Defendants Object to the Magistrate Ignoring the Sworn Testimony of Brent MacDonald**

As part of the evidence submitted in support of their Motion, Defendants attached the Declaration of PLG's Chief Executive Officer, Brent MacDonald.  (ECF 109-3).  Under penalty of perjury, Mr. MacDonald, testified that "Principal Law Group, LLP *has no record of any customer or lead* with the following information:

   a.   Craig Cunningham

   b.   3000 Custer Road, Ste. 170-206, Plano, TX 75075

   c.   650 East Stonewall Street, Charlotte, NC 28202

   d.   Phone numbers: 615-348-1977 or 704-444-3333

   e.   Email: craig.cunningham1980@gmail.com or newcountryllc@gmail.com"

(*Id.* at ¶ 2 (emphasis added)).  This evidence establishes that neither PLG, nor any of its agents, made the purported TCPA offending to calls to Plaintiff on behalf of Defendants.

In his discussion of the summary judgment record, the Magistrate mentioned Mr. MacDonald's declaration, but dismissed its importance because "other evidence in the record [purportedly] showed that PLG sub-contracted with Elite to perform mass tort marketing, corroborating Johnson's link to PLG."  (ECF 121 at 8-9).  Even accepting that contention as true, however,  if PLG, or any of its agents, made unlawful calls to Plaintiff, his information necessarily would show up in PLG's database, as PLG was allegedly passing those leads along.  But Mr. MacDonald's declaration eliminates that possibility because Plaintiff, nor any of his identifying information, is found in PLG's records.  (ECF 109-3 at ¶ 2).  As such, the very crux of Plaintiff's latest theory—TCPA offending calls made to him by PLG or its agents—crumbles.

Despite all this, the Magistrate ignored Mr. MacDonald's declaration when

making his findings above.  Indeed, nowhere in his discussion of either his finding on the issues of actual authority or ratification does he discuss Mr. MacDonald's declaration, much less recognize its importance to either issue.  Defendants object to the Magistrate's decision to ignore Mr. MacDonald's declaration because had it been properly considered, the lack of a genuine issue of material fact on Plaintiff's actual authority and/or ratification theory would be even more apparent.

## CONCLUSION AND PRAYER

Defendants pray that the Court grant their Objections to the Magistrate's Report & Recommendation, reject the Magistrate's findings, and grant Defendants' Motion for Summary Judgment.  Defendants pray for such other and further relief to which they are entitled both at law and in equity.

Respectfully submitted,

GUERRA LLP
875 E. Ashby Place
Suite 1200
San Antonio, Texas 78213
Telephone: (210) 447.0500
Facsimile: (210) 447.0501

/s/ Alicia D. O'Neill
FRANCISCO GUERRA, IV.
State Bar No. 00796684
Email:  fguerra@guerrallp.com
ALICIA O'NEILL
State Bar No. 24040801
Email: aoniell@guerrallp.com

AND

MIKAL WATTS
State Bar No. 20981820
WATTS LAW FIRM LLP
811 Barton Springs, Suite 725
Austin, Texas 78704
Phone: 210-315-4477
Email: mikal@wattsllp.com

ATTORNEYS FOR DEFENDANTS,
WATTS GUERRA LLP, MIKAL C.
WATTS, FRANCISCO GUERRA, IV.,
and PAIGE BOLDT

## NOTICE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that she has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Case Management/Electronic Case Files System of the Western District of Texas on the 28th day of March 2025.

/s/ Alicia D. O'Neill
Alicia D. O'Neill

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, a true and correct copy of the above and foregoing has been sent to the following counsel of record by means indicated below:

Bryan A. Giribaldo                              *Via CM/ECF*
Alex Kruzyk
PARDELL, KRUZYK & GIRIBALDO, PLLP
501 Congress Avenue, Suite 150
Austin, Texas 78701

*and*

Todd M. Friedman                                *Via CM/ECF*
Adrian R. Bacon
THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, California 91364
*Counsel for Plaintiff and the proposed classes*

/s/ Alicia D. O'Neill
Alicia D. O'Neill